FIRST CATHOLIC SLOVAK UNION OF THE UNITED STATES AND CANADA, APPELLANT, *v.* BUCKEYE UNION INSURANCE CO. ET AL., APPELLEES.

(No. 50329 — Decided April 3, 1986.)

*Theodore T. Macejko, Sr.,* for appellant.

*Mark I. Wallach,* for appellee Frank B. Hall & Co.

MARKUS, J. The First Catholic Slovak Union of the United States and Canada, a religious fraternal society, sought reimbursement from the Buckeye Union Insurance Co. and the insurer's sales agency for $119,500 embezzled by the society's employee. The insurer maintained that its policy afforded only $25,000 coverage for that loss. The trial court agreed, and the society does not challenge that ruling here. However, the society appeals the ruling that the sales agency did not owe the remaining loss, arguing that the agency negligently failed to provide proper coverage. We affirm the trial court's judgment.

I

At the nonjury trial of this declaratory relief case, the society relied upon testimony by its past secretary, its present secretary, and an insurance expert. The sales agency presented testimony from one of its sales employees who worked on that account and from another insurance expert. Both sides presented relevant exhibits.

The society is a nonprofit fraternal organization whose primary function is the sale of life insurance policies to its eighty thousand members in seventeen states. The society's bylaws require its officers to "give surety bond payable to the" society in stated amounts for designated officers (*e.g.,* secretary — $250,000). The bylaws provide that "[t]he surety bond shall cover fraud, dishonesty, embezzlement, misapplication of funds or property, whether direct or indirect."

In 1976, the society began acquiring fidelity insurance policies from the defendant insurer through the defendant sales agency. The society's treasurer was an employee of that sales agency who was particularly well versed in fidelity policies. He died before the trial, so two of the society's other officers and the sales agency's other employee described his involvement in these transactions.

The society assigned its treasurer the task of selecting appropriate cover-

age which would satisfy its bylaws. The treasurer designed a policy for the society from available policy terms and endorsements. He then asked the sales agency's other employee for that account to order that policy from the insurer. When the insurer delivered the requested policy, the treasurer reviewed it with a committee of society officers who approved it. The society then renewed that policy biannually, with occasional increased limits for dishonesty by specific officers.

The fidelity policies which the society obtained provided "blanket crime" and "comprehensive crime" coverage for defalcations by every society officer and home office employee. The basic coverage limit for any home office employee's forgery thefts was $25,000. Excess coverage increased those limits for dishonesty by the society's individual officers (e.g., secretary — $250,000).

In March 1982, the society's officers discovered that a subordinate employee under the secretary's general supervision had embezzled $119,500 during the preceding three years. Using check blanks and a facsimile signature stamp which the society made available for her employment, an accounts payable clerk issued society checks to herself.

The society claimed that the insurer or the insurer's sales agency should have provided coverage specified by the society's bylaws. It argued that coverage consistent with its bylaws would have required the insurer to reimburse it fully for those embezzlement losses. The court returned a general verdict for both defendants. No party requested the court to issue separate findings of fact and conclusions of law, and it did not do so.

## II

The society's three assignments of error assert that the court's verdict for the sales agency is contrary to law or the weight of the evidence.

An insurance sales agency has a duty to exercise good faith and reasonable diligence in obtaining insurance which its customer requests. See *Stuart* v. *Natl. Indemn. Co.* (1982), 7 Ohio App. 3d 63, 66. When the agency knows that the customer is relying upon its expertise, the agency may have a further duty to exercise reasonable care in advising the customer. *Stuart* v. *Natl. Indemn. Co., supra; Roberts* v. *State Farm Mut. Auto. Ins. Co.* (Jan. 7, 1982), Cuyahoga App. No. 43388, unreported.

In this case, the court could properly find that the agency provided exactly what the society requested. There was evidence that the society's treasurer communicated its requirements to another agency employee who accurately reported those policy details to the insurer.

The society claims that the insurance agency should have satisfied its bylaws provisions for fidelity bonds. It argues that such a bond would have covered this embezzlement as a loss attributable to the secretary under whose supervision that embezzler worked. However, there was no evidence that the treasurer provided the other agency employee with the precise terms of the society's bylaws. Consequently, except for the treasurer's own knowledge, the agency could not be responsible for satisfying those terms.

The society argues that its treasurer was also the agency's employee, so his knowledge was imputed to the agency without being communicated to any other agency employee. In that event, the treasurer was an agent for both the society and the sales agency, so both were equally responsible for his policy selections. See Annotation (1965), 4 A.L.R.3d 224, 230-233; Annotation (1927), 48 A.L.R. 917, 923-924.

Additionally, there was substantial evidence that no insurer would have provided greater protection if it had attempted to comply with the society's bylaw terms. The agency's expert testi-

fied that (1) insurers do not sell surety bonds for non-government employees, (2) fidelity insurance was its practical equivalent, and (3) neither protection applicable to the secretary would reimburse for thefts by an employee under the secretary's supervision, unless the secretary participated in those thefts. He said that "direct or indirect" responsibility referred to in the bylaws constitutes collusion or connivance in insurance language. There was no evidence that the secretary participated directly or indirectly in the thefts by the employee under his general supervision.

Finally, for several years the society received and held repeated policies with the same terms that applied when the thefts occurred. It cannot complain that the policies did not comply with its requests, when it made no complaint about those policies for that extended interval. Cf. *Hartford Fire Ins. Co.* v. *Whitman* (1906), 75 Ohio St. 312, 319; *Grange Mut. Cas. Co.* v. *Fodor* (1984), 21 Ohio App. 3d 258, 262; *Van Antwerp* v. *Progressive Ins. Co.* (Feb. 20, 1986), Cuyahoga App. No. 50203, unreported.

An appellate court must affirm a trial court's verdict if it is supported by substantial, competent, credible evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80; *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus. The record here provides sufficient evidence to justify the trial court's factual finding that the agency satisfied its duty to this customer. Cf. *Shear* v. *West American Ins. Co.* (1984), 11 Ohio St. 3d 162, 164.

We overrule the society's assigned errors and affirm the trial court's judgment.

*Judgment affirmed.*

PARRINO, C.J., and ANN McMANAMON, J., concur.