OPINION
This matter presents two timely appeals from judgments rendered by the Columbiana County Common Pleas Court, granting the motions for summary judgment of defendants-appellees, Westfield Insurance Co., et al., against plaintiff-appellant, Louise Wells and defendant-appellant, Carl Hoppel.
Carl Hoppel owned an apartment complex in Lisbon, Ohio, and was insured through Nationwide Insurance Company. In 1995, David Hoppel and his wife Bonnie Hoppel agreed to purchase the apartment from Carl. This agreement was memorialized by a bill of sale and deed, both of which were dated August 1, 1995. Carl gave his brother, David, the deed to the apartment, but David did not record the deed, as the brothers allegedly agreed that David would pay off the liens on the property before the deed was recorded.Since the liens could not be satisfied quickly, David decided that he would obtain insurance on the property. David sought insurance for himself, his wife Bonnie and for Carl. David's secretary subsequently contacted Robert Hodgson, an agent with F.W. Arnold Agency. She explained the situation to Hodgson, and also told Hodgson of David's desire to insure Carl on the policy as a co-owner. Hodgson discussed the situation with the customer service representative of F.W. Arnold Agency. (Hodgson Depo. 24). The customer service representative contacted Westfield Insurance Company, and explained the situation. Westfield thereafter issued an endorsement, naming Carl as an additional insured. (Rinto Depo. 47-48). However, the endorsement listed Carl as a lessor, instead of naming Carl as a co-owner. David told Carl that he added Carl as an additional insured under the Westfield policy. Based upon David's willingness to add Carl as an additional insured, Carl allowed his policy with Nationwide to lapse.
On April 17, 1996, Halene Springer, a tenant of the apartment complex, was crushed to death when the back of her porch collapsed. Appellant Louise Wells, acting as administratrix of Springer's estate, filed a wrongful death action against Carl and David. Both Nationwide and Westfield denied coverage to Carl. Nationwide based its denial upon the fact that the policy was canceled November 20, 1995, due to Carl's non-payment of premiums, and the cancellation was back-dated to October 1, 1995 by Nationwide's agent Ken Kibler. Westfield denied coverage stating that Carl was not an owner of the apartment at the time of the accident and did not have an insurable interest, and also refused to defend Carl. Carl neither obtained his own counsel nor answered the complaint, and as a result, had a default judgment entered against him. Wells thereafter filed a declaratory judgment action, requesting that the trial court declare Carl had insurance coverage at the time of the accident. Carl also filed a cross-claim against Kibler contending that Kibler was negligent in failing to offer him tail coverage.
Nationwide and Kibler filed a motion for summary judgment, and the trial court granted same on January 6, 1999. Carl appealed this decision. Thereafter Westfield, F.W. Arnold Agency and Hodgson all filed motions for summary judgment. Wells also filed a motion for summary judgment.
On January 20, 1999, the trial court granted the motions for summary judgment filed by Westfield, F.W. Arnold Agency and Hodgson, stating that Carl did not have coverage under the Westfield policy as he did not have an insurable interest. Wells appealed this decision. This court consolidated the appeals of both Carl and Wells.
Wells sets forth three assignments of error on appeal and Carl sets forth two assignments of error on appeal. However, since Wells' three assignments of error and Carl's first assignment of error have a common basis in law and fact, they will be discussed together and respectfully allege:
 "THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY FINDING THAT CARL HOPPEL HAD NO INSURABLE INTEREST IN THE SUBJECT PROPERTY.
 "THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY FINDING THAT THE ACTIONS OF WESTFIELD INSURANCE COMPANY AND ITS AGENTS DID NOT BIND WESTFIELD TO HONOR ITS CONTRACT OF INSURANCE WITH CARL HOPPEL.
 "THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY NOT ORDERING THE POLICY OF INSURANCE BE REFORMED TO PROVIDE COVERAGE FOR CARL HOPPEL.
 "THE TRIAL COURT ERRED IN DECLARING THAT THE WESTFIELD POLICY DID NOT PROVIDE COVERAGE TO CARL HOPPEL."
Summary judgment is governed by Civ.R. 56(C), and in WelcoIndustries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346, the Ohio Supreme Court discussed the standard for granting summary judgment, stating:
 "Under Civ.R. 56, summary judgment is proper when `(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' * * * Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."
Additionally, the Ohio Supreme Court in Dresher v. Burt (1996),75 Ohio St.3d 280, held that a moving party cannot discharge its initial burden under Civ.R. 56 by simply making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims. The Ohio Supreme Court, in Dresher, supra, further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which such party bears the burden of production at trial. In reviewing a trial court's decision to grant summary judgment, a court of appeals must conduct a de novo review of the record.
Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326.
In Phillips v. Cincinnati Ins. Co. (1979), 60 Ohio St.2d 180, 181, the Ohio Supreme Court stated that a person must have an insurable interest in the subject matter of the insurance, otherwise the policy is void. The Ohio Supreme Court in Phillips, supra at 182, further stated that a person has an insurable interest in property when, "* * * he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction."
Wells first argues that the transfer of property between Carl and David was not complete, and Carl did not relinquish title. Wells also maintains that transfer of a deed does not in itself establish an unconditional conveyance of title, but that there must be a mutual intention of the parties to pass title to the property described in the deed. Kniebbe v.Wade (1954), 161 Ohio St. 294, 297. In addition, Wells contends that the sale of the apartment from Carl to David was conditioned upon David paying off the liens on the property. Further, Wells submits that until the liens were paid off, title to the apartment remained with Carl. Therefore, Wells alleges that since Carl remained the owner of the apartment until the liens were paid, Carl continued to have an insurable interest.
In support of their position, appellees cite to R.C. 5301.25(A), which states:
 "Recording of instruments for the conveyance or encumbrance of lands; name of surveyor; exceptions.
"(A) All deeds, land contract referred to in division (B)(2) of section317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they arefraudulent, so far as relates to a subsequent bona fide purchaserhaving, at the time of purchase, no knowledge of the existence of suchformer deed or land contract or instrument." (Emphasis added).
 Moreover, in Kniebbe, supra at 297, the Ohio Supreme Court stated:
 "It is fundamental that, in order for a deed to be operative as a transfer of ownership of land or an interest or any estate therein, there must be a delivery of the instrument. It is the delivery that gives the instrument force and effect. Delivery imports transfer of possession or the right to possession of the instrument with the intent to pass title as a present transfer. It is essential to delivery that there not only be a voluntary delivery, but there must also be an acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property described in the deed. * * *.
"It is the general rule that there is a presumption of delivery arisingfrom the possession of a deed by the named grantee." (Emphasis added).
Appellees correctly argue that there was a completed transaction between Carl and David, thereby transferring valid title from Carl to David. In the present matter, Carl executed a deed on August 1, 1995. Furthermore, a bill of sale indicated that the transfer of the apartment complex occurred on August 1, 1995. Appellees also accurately state that no conditions existed which would encumber the transfer in either the deed or the bill of sale. Additionally, David stated that the property was sold the day the deal was made and that ownership of the apartment complex transferred to him on August 1, 1995. (David Hoppel Depo. 35-37). When David obtained possession of the deed, there arose a presumption that Carl intended to deliver the deed, thereby transferring ownership of the apartment complex to David. Wade, supra.
While under R.C. 5301.25, the unrecorded deed would have been deemed fraudulent and ineffective against a bona fide subsequent purchaser without notice, appellees were not bona fide subsequent purchasers. Accordingly, the deed delivered from Carl to David was not fraudulent as it pertained to appellees.
In light of the evidence presented, title to the apartment complex clearly transferred from Carl to David on August 1, 1995, which was prior to the April 17, 1996, accident. Thus, Carl did not have an insurable interest based upon ownership of the property.
Wells and Carl next argue that even if this court determines that Carl transferred title to David, Carl nonetheless had an insurable interest. In Stauder v. Associated General Fire Co. (1957), 105 Ohio App. 105,109, the court stated that an insurable interest does not require ownership of property. Specifically, Wells argues that Carl demonstrated an economic detriment necessary for an insurable interest and refers to many instances evidencing such detriment, including the fact that Carl was found to be jointly and severally liable for the wrongful death of Springer. Second, Wells points to the deposition of John B. Robertson, wherein Mr. Robertson stated that Carl had ownership and an insurable interest in the apartment complex. Finally, Wells contends that the property served as a means to satisfy the unpaid liens on the property and suggests that if the property was destroyed, Carl would have suffered an economic detriment because Carl would no longer be able to use the underlying asset to satisfy the liens.
Based upon these three arguments, Wells contends that Carl demonstrated the requisite insurable interest and he should have been insured under the Westfield policy at the time of the accident.
Carl cites Buckeye Union Ins. Co. v. Dougherty (July 3, 1985), Cuyahoga App. No. 49315, unreported, wherein the court stated:
 "`[A]lmost any hazard which may expose a person to pecuniary loss may constitute a valid insurance interest,' and `the risk insured against is not based on ownership of property, but upon loss and injury caused by its [the property covered by liability insurance] use for which the insured might be liable.'"
Based on this proposition, Carl argues that the wrongful death lawsuit subjected him to pecuniary loss, thereby demonstrating an insurable interest. As such, Carl contends that he was, indeed, insured under the Westfield policy at the time of the accident.
Appellees' attempt to effectively refute Wells' three arguments is successful. Initially, appellees appear to correctly contend that the trial court acted properly in refusing to consider the affidavit of John B. Robertson. In Stamper v. Middletown Hosp. Assn. (1989),65 Ohio App.3d 65, 69, the court stated:
 "Civ.R. 56(E) requires that affidavits be made upon the personal knowledge of the affiant and set forth facts that would be admissible in evidence. * * *. Affidavits which merely set forth legal conclusions or opinions without stating supporting facts are insufficient to meet the requirements of Civ.R. 56(E)."
Furthermore, this court applied Stamper, supra, in Cordon v. RulliBrothers, Inc. (Dec. 22, 1994), Mahoning App. No. 93-CA-50, unreported. In the case at bar, Robertson's affidavit appeared to be nothing more than a legal brief. In forming his opinion, Robertson did not put forth any personal knowledge, but merely recited facts from the case and set forth his opinion that there was an insurable interest. Therefore, Robertson's affidavit did not satisfy Civ.R. 56(E), and the trial court properly refused to consider the affidavit. Stamper, supra.
Second, appellees correctly argue that Carl's insurable interest cannot be evidenced solely by the fact that there was a judgment against him.
Upon Westfield's denial of coverage, Carl refused to file an answer to Springer's wrongful death complaint. As a result, the trial court entered default judgment against him. Thus, as appellees accurately contend, the judgment in itself was insufficient to demonstrate an insurable interest because judgment was not taken against Carl based upon an interest in the property, but, rather, was founded upon Carl's inaction in the lawsuit. Accordingly, Carl did not have an insurable interest merely because there was a judgment entered against him.
Finally, appellees correctly maintain that the mere fact that there were liens on the property did not provide Carl with an insurable interest.
In the present matter, the liens attached to the property and ran with the land. Thus, had the property been destroyed, David and Bonnie, who had an insurable interest in the property, would have been able to collect the money from the Westfield policy and pay the liens from that money. Therefore, Carl did not have an insurable interest merely because there were liens on the property.
Moreover, Carl's argument is not sufficient to support a finding that he had an insurable interest. Based upon the existence of liability insurance, Carl does not have an insurable interest. It is noted that an insurable interest is not as important in liability insurance, because it does not present the same type of moral hazard that applies to property insurance. Any potential liability may subject an insured to pecuniary harm, and a person who faces such harm has an insurable interest. BuckeyeUnion, supra. However, in the present matter, David obtained a "Business owners Apartment Package Policy," which included both property insurance and liability insurance. While Carl appeared to have an insurable interest for the liability coverage, based upon the fact that it protected him from pecuniary loss, this insurable interest does not exist for the property loss coverage. Thus, it must be determined whether the property coverage and liability coverage in the insurance policy were divisible.
In DePugh v. Mead Corp. (1992), 79 Ohio App.3d 503, 512-13, the court stated:
 "Divisibility is a general technique by which a court can mitigate the harshness of a rule that bars a party from enforcing an agreement by apportioning the performances into corresponding pairs of part performances and then enforcing the agreement as to only one part; additionally, the issue of whether an agreement is divisible is a question of law. Spensley Feeds, Inc. v. Livingston Feed Lumber, Inc. (App. 1985), 128 Wis.2d 279, 381 N.W.2d 601, 604.
"Although there is no exact definition to determine when a contract is `divisible' or `entire,' a contract is generally not severable or divisible when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. * * *. If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items."
In the case at bar, if the insurance policy at issue was severable to provide property coverage and liability coverage independent of each other, then Carl would have had an insurable interest pursuant to the liability coverage and would have been entitled to coverage. However, since the property coverage and liability coverage were not severable, Carl's lack of an insurable interest under the property coverage also negates an insurable interest in the liability coverage.
The facts at issue herein do not manifest an intent by the parties to the insurance contract that the policy be severable. The policy did not require separate premiums for property insurance and liability insurance, but rather, required a single premium. Furthermore, the insurance policy allowed for cancellation of the entire policy and did not mention the property coverage and liability coverage separately. The policy provides:
 "A. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the CANCELLATION Common Policy Condition is replaced by the following:
"* * *
 "2. We may cancel this policy only for one or more of the following reasons, except as provided in paragraph 6. below.
"* * *
 "c. Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;" (Emphasis added).
Given that the entire policy could be canceled, in conjunction with the fact that there was a single premium paid for the policy, it is clear that the parties did not intend to create a severable insurance policy.DePugh, supra. Therefore, Carl's apparent insurable interest pursuant to the liability coverage cannot be separated from his lack of insurable interest under the property coverage.
Additionally, Carl also argues that even assuming arguendo he did not have an insurable interest in the apartment complex, appellees waived the insurable interest requirement because they were fully aware of the facts regarding the situation, and did not find a lack of an insurable interest.
A party may be estopped from asserting the defense of no insurable interest. Dispillo v. Cochrane Assoc. (Oct. 17, 1986), Lucas App. No. L-85-452, unreported. In Illinois National Ins. Co. v. Cramer (August 13, 1986), Belmont App. No. 85-B-20, unreported, this court stated:
 "`* * *. [I]t is usually held that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions.'"
In the case at bar, Hodgson was F.W. Arnold's agent, and F.W. Arnold was Westfield's agent. (Rinto Depo. 19). As such, Hodgson was provided with some of the pertinent facts regarding the transaction and was also told that the deed would not be recorded immediately because of the liens on the property. (Hodgson Depo. 17). Furthermore, a copy of the deed transferring title to the property was given to Hodgson. (Hodgson Depo. 13). Hodgson discussed the matter with F.W. Arnold's customer service representative, and they decided that it was a land sale contract, and erroneously decided that Carl had an ownership interest. (Hodgson Depo. 24). Westfield was then informed of the situation and was presented with a copy of the deed. (Hodgson Depo. 13, 25). Westfield was also erroneously told that Carl continued to have an ownership interest in the property. (Hodgson Depo. 34).Thereafter, a policy was issued naming Carl as an additional insured, but while he was intended to be named as a co-owner, he was instead named as a lessor. Moreover, Carl and David paid extra premiums for the additional coverage of Carl. Believing he was covered by the Westfield policy, Carl changed his position to his detriment in reliance thereon by allowing his policy with Nationwide to lapse. Thus, genuine issues of material fact remained as to whether appellees were estopped from refusing to later recognize Carl as a co-owner, given the fact that they appeared to have knowledge of the existing facts surrounding the transaction. Illinois National, supra.
Further, there was a genuine issue of material fact as to the amount of knowledge that the parties possessed and whether this knowledge caused a waiver of the insurable interest defense. Illinois National, supra. Therefore, the trial court erred in granting summary judgment as to Hodgson, F.W. Arnold and Westfield.
Wells' next contention is that the trial court erred in failing to reform the contract to correspond with the parties intention to insure Carl as a co-owner of the apartment complex. Westfield erroneously did not name Carl as a co-owner of the apartment complex, but instead provided coverage to Carl as a lessor. Wells contends that this amounted to error because Carl was not a lessor. Therefore, Wells argues that reformation was proper to give effect to the parties' intentions.
Appellees cite Union Central Life Ins. Co. v. Hook (1900),62 Ohio App. 256, wherein the court held that an insured was presumed to know the contents of an insurance policy. Appellees also cite FirstCatholic Slovak Union v. Buckeye Union Ins. Co. (1986), 27 Ohio App.3d 169,171, for the proposition that an insured could not complain that an insurance policy did not comply with its request when the insured failed to previously complain. Appellees maintain that Carl is barred from complaining that he was named as a lessor of the apartment complex in the insurance policy because he was deemed to know the contents of same and, thus, knew that he was named as a lessor. Hook, supra. Furthermore, appellees suggest that Carl should be precluded from now asserting any errors in the insurance policy because he did not review the policy at the inception of the insurance contract.Carl correctly asserts that he should not be held to have had knowledge of the contents of the insurance policy. The case at bar is distinguishable from Hook, supra, and FirstCatholic, supra.
In Hook, supra, the insured paid premiums on the policy for nine years, while the present matter involved a new policy. Also, in FirstCatholic, supra, the insured had a long established relationship with the insurer, which was not present in the case at bar. Furthermore, the court in Hook, supra, stated that an insured is presumed to have knowledge of an insurance policy only in the absence of fraud or mistake. However, in the present matter, after being presented with all of the pertinent information, the insurance policy was apparently issued under the mistaken belief that Carl had an ownership interest in the apartment complex and mistakenly listing Carl as a lessor. If mistake did, in fact, occur then Carl is not presumed to have had knowledge of the contents of the insurance policy. Hook, supra. Accordingly, a genuine issue of material fact existed as to whether the policy was issued under a mistake, as under such circumstance, Carl would not be presumed to have had knowledge of the contents of the insurance policy.
Next we must consider whether the trial court should have ordered the reformation of the insurance contract.
In Wagner v. National Fire Ins. Co. (1937), 132 Ohio St. 405, 412, the Ohio Supreme Court discussed mutual mistake and reformation, stating:
 "Mutual mistake is the mistake of all parties to the contract. Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties. Equity, however, will never make a new contract for those who executed the writing sought to be reformed."
It is important to note that appellees concede that the parties intended to provide coverage to Carl, as owner of the property. However, both appellees' argument and the trial court's judgment entry concerning the possible reformation of the contract, are contradictory.
In finding that reformation was not available, the trial court stated:
 "The intent of the parties was to provide coverage to Carl Hoppel, as an owner of the property, and since he was not an owner to reform the contract now would not be expressing the intent of the parties."
The trial court's judgment entry and appellees' argument appear to state that since appellees erroneously believed that Carl was a co-owner, reformation is precluded. However, as previously mentioned, there is a genuine issue of material fact with regard to whether appellees were estopped from refusing to recognize Carl as a co-owner.
If appellees are later found to be so estopped, reformation of the insurance contract would be proper as appellees conceded that it was the intention of the parties to insure Carl as a co-owner, as opposed to a lessor. Reformation could thereby cause the contract to reflect the actual intention of the parties. Thus, a genuine issue of material fact exists as to whether reformation would be proper. Therefore, the trial court erred in granting the motion for summary judgment of Hodgson, F.W. Arnold and Westfield as it pertained to the possible reformation of the contract.
Wells' first, second, and third assignments of error are found to be with merit. Furthermore, Carl's first assignment of error is found to be with merit.
Carl's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN DECLARING THE NATIONWIDE POLICY DID NOT COVER CARL HOPPEL'S LIABILITY EVEN THOUGH THE NEGLIGENT ACTS GIVING RISE TO HIS LIABILITY OCCURRED WHILE THE POLICY WAS IN EFFECT."
In composing his argument, Carl presents that he had an occurrence-based policy with Nationwide.
In Mueller v. Taylor Rental Ctr. (1995), 106 Ohio App.3d 806, 810, the court discussed the difference between a claims-made insurance policy and an occurrence-based policy, stating:
 "`A claims made policy provides coverage for claims brought against the insured only during the life of the policy. An occurrence policy provides coverage for acts done during the policy period regardless of when the claim is brought.'"
Carl contends that since he had an occurrence-based policy with Nationwide, his coverage under such policy continued even though the premiums were allowed to lapse. Carl maintains that Ms. Springer was killed after being crushed by a porch which, as it was alleged, he negligently maintained. Consequently, Carl urges that while Ms. Springer's death did not occur until April 17, 1996, the negligence must have occurred during the period when Carl had coverage with Nationwide.
Carl cites the trial court's decision in Ruffin v. Sawchyn (1991),75 Ohio App.3d 511, 514, wherein it held that an insurer must provide indemnification to an insured when negligence occurs during a policy period and such negligence proximately causes injury. Although the appellate court in Ruffin, supra, reversed the holding of the trial court, Carl asks this court to reject the appellate court's decision inRuffin, supra, and find that he was entitled to indemnification from Nationwide. In addition, Carl submits that Nationwide's failure to provide tail coverage resulted in a violation of public policy.
The Nationwide liability coverage form states:
"A. COVERAGES
"1. Business Liability
 "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury,' `property damage,' `personal injury' or `advertising injury' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages. We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result. * * *
"* * *
"b. This insurance applies:
"(1) To `bodily injury' and `property damage' only if:
 "(a) The `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory'; and
 "(b) The `bodily injury' or `property damage' occurs during the policy period." (Emphasis added).
In Ruffin, supra, the court held that a similar clause to the one in the present case was clear and unambiguous, and refused to find coverage if the injury did not occur during the policy period. In the case at bar, Ms. Springer's death did not occur until April 17, 1996, and Nationwide canceled Carl's policy on November 20, 1995, due to Carl's non-payment of premiums, and the cancellation was back-dated to October 1, 1995. Furthermore, Nationwide did not violate public policy in refusing to offer tail coverage, as it is unlikely that Carl would have purchased such coverage since he believed he was insured under the Westfield policy.
Given that the language of the policy was unambiguous, and that the death of Ms. Springer did not occur until after the Nationwide policy was canceled, a genuine issue of material fact did not exist regarding any potential insurance coverage for Carl under the Nationwide policy. Therefore, the trial court did not err in granting the motion for summary judgment for Nationwide and Ken Kibler.
Carl's second assignment of error is found to be without merit.
The judgment of the trial court granting the motion for summary judgment in favor of Hodgson, F.W. Arnold and Westfield is reversed and this cause is remanded for further proceedings in accordance with law and consistent with this opinion.
The judgment of the trial court granting the motion for summary judgment for Nationwide and Kibler is affirmed.
DONOFRIO, J., concurs, WAITE, J., concurs.