OPINION
Plaintiffs-appellants, Franklin T. Nichols, Janet Nichols, Heather Nichols, Joshua Nichols, and Sarah Nichols, appeal from the July 5, 2001 decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Economy Fire and Casualty Company ("Economy"), Jack Ley, and Jack Ley Insurance Agency. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
Appellants Franklin and Janet Nichols are husband and wife; Heather, Joshua, and Sarah are three of their children. On July 5, 1996, Franklin was driving a 1995 Toyota Camry in Platte County, Missouri, when an unknown driver forced him off the road. Janet, Heather, Joshua, and Sarah were all passengers in the vehicle, and all the appellants sustained physical injuries.
Janet Nichols submitted a claim to Economy for damages, including total loss of the vehicle, personal injuries, lost wages, and medical bills. On August 1, 1996, Economy notified Mrs. Nichols that her insurance policy was void because Mr. and Mrs. Nichols had signed a named driver exclusion that precluded recovery if Mr. Nichols were operating the vehicle.
Appellants' relationship with Jack Ley and the Jack Ley Insurance Agency had begun in May 1995, when Janet Nichols found the Jack Ley Insurance Agency listed in the telephone book. Janet telephoned the agency to inquire about obtaining insurance on a Geo Metro. Janet and Franklin subsequently met with Ley who advised them that they could not obtain coverage if Franklin were on the policy. Franklin had been involved in a serious automobile accident in 1994, and his doctor had advised him not to drive. There were also issues concerning a license suspension for Franklin. As part of his professional advice to the Nichols, Ley advised them that, in order for Franklin to keep his operator's license, he needed to obtain a financial responsibility bond.
In order to obtain coverage for Janet, Janet and Franklin executed a "Named Driver Exclusion" on Franklin for the automobile policy issued to Janet by Economy. In pertinent part the exclusion provided as follows:
 In consideration of the premium at which this policy is written, it is agreed that all coverage afforded by this policy is void and shall not apply to any claim or suit which occurs as the result of any vehicle being operated by the following person(s):
Franklin Nichols Husband of named insured
* * *
 This endorsement cannot be cancelled or altered except by written notice from the Company.
Janet Nichols testified that Jack Ley explained the exclusion as follows:
 A. He told us we couldn't get insurance anywhere if Frank was on the policy. And when we left the office, he told us Frank could not drive that car and asked, "Do you understand?"
And I said, "Yes. Frank cannot drive the car."
 And that was the Geo Metro, and he did not drive that car. [Deposition of Janet Nichols at 54.]
The policy had an effective date of May 5, 1995. Defendant Progressive Insurance Company issued a bond to Franklin Nichols with an effective date of June 9, 1995.
In October or November 1995, the Nichols traded in the Geo for a Toyota Camry. Janet Nichols telephoned Jack Ley to inform him of the purchase. According to Janet Nichols, she advised Ley that Franklin would be driving the Camry. Janet testified in her deposition as follows: "When I called Jack Ley on the car, I specifically told him that we had traded in the Geo, we've got a Camry, and Frank got a release from the doctor so he will be driving it." (Deposition of Janet Nichols at 88.) According to Janet Nichols, Ley responded that "he would take care of everything." (Deposition of Janet Nichols at 56, 57.) Franklin Nichols recalled as follows: "I do recall him specifically making a representation that I was covered while driving the Camry," and that "it was okay for me to drive the Camry, that I was insured to drive the Camry." (Deposition of Franklin Nichols at 65-66.) It is not clear when this conversation between Franklin Nichols and Jack Ley allegedly took place.
Jack Ley had a notation in his activity log about the vehicle change, but he had no recollection that the Nichols had ever contacted the office to ask about taking the exclusion off. The Nichols never received any written documentation that indicated Franklin was no longer excluded from the policy. When Janet Nichols received the renewal statement from Economy she did not look at it to see if the exclusion had been taken off the policy. The declaration page in effect at the time of the accident showed the vehicle change to the Toyota Camry, and it showed that the named driver exclusion was still in effect.
After Economy denied coverage, appellants filed suit in Cuyahoga County against appellants and other defendants. The suit was dismissed and refiled, and eventually the case was transferred to the Court of Common Pleas of Franklin County on or about July 20, 2000. Among other things, appellants alleged that Economy negligently and intentionally failed to pay the claims of appellants, that Economy acted in bad faith, that Jack Ley and Jack Ley Insurance Agency breached an oral contract to provide coverage in which Franklin Nichols was not an excluded driver, and that Jack Ley and Jack Ley Insurance Agency negligently failed to procure coverage or follow appellants' instructions.
Appellants dismissed defendant Progressive Insurance Company and other defendants. The remaining defendants, Economy, Jack Ley, and Jack Ley Insurance Agency filed motions for summary judgment. On July 5, 2001, the trial court granted summary judgment in favor of the remaining defendants.
On appeal, appellants have assigned the following as error:
 It is the Assignment of Error of the Appellants that the Trial Court erred when it granted summary judgment in favor of Appellees Economy Fire and Casualty Co., Jack Ley and Jack Ley Insurance Co. on July 5, 2001 where the pleadings, depositions, affidavits and exhibits established that there were genuine issues of material fact and the Appellees were not entitled to judgment as a matter of law.
As to appellants' contention that summary judgment was improperly granted, Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 * * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. [See Dresher; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.]
In their sole assignment of error, appellants raise several arguments. First, with respect to Economy, appellants argue they are entitled to coverage under the uninsured motorist provision of the Economy policy because the named driver exclusion is invalid with respect to uninsured motorist coverage. According to appellants, operation of the vehicle by an excluded driver is not a condition that would preclude the insured, Janet Nichols, and her family from recovering under the uninsured motorist provisions of the policy.
In support of this argument, appellants cite Holliman v. Allstate Ins. Co. (1999), 86 Ohio St.3d 414, for the proposition that an exclusion that purports to deny a qualified claimant uninsured motorist coverage is invalid. Appellants misconstrue Holliman which does not apply to this case.
Holliman was a case involving the definition of an "insured" under an umbrella policy. In Holliman, the Supreme Court of Ohio adopted an opinion of this court in its entirety in which this court held that an umbrella policy that unambiguously excluded plaintiffs from the class of persons insured under it did not violate the purpose or language of the uninsured motorist statute. Therefore, the plaintiffs were not legally entitled to recover under the policy. Id. at 418.
The Supreme Court of Ohio has not definitively ruled on the validity of a named driver exclusion as it relates to the uninsured motorist statute. In Newkirk v. State Farm Mut. Ins. Co. (1999), Preble App. No. CA98-05-005, the Twelfth District Court of Appeals upheld the validity of a named driver exclusion. The Supreme Court of Ohio vacated the judgment and remanded the case for further proceedings in light of its decisions in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, and Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27. Newkirk v. State Farm Mut. Ins. Co. (2000), 88 Ohio St.3d 402. However, Wolfe dealt with contract renewal periods and Moore dealt with whether an insurer could limit uninsured motorist coverage in such a way that an insured must suffer bodily injury in order to recover. Thus, the issue of whether a named driver exclusion is valid if it renders all coverage void if the named driver is operating a motor vehicle has yet to be decided by the Ohio Supreme Court.
Looking to the statutory scheme and prior case law for guidance, we see generally that an automobile insurance policy may not use liability exclusions to eliminate or reduce uninsured or underinsured motorist coverage. Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478,480. In Martin, the court reiterated its holding in State Farm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, that R.C. 3937.18
mandates coverage if (1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law. In addition, R.C. 3937.18 requires that an insurer offer uninsured and underinsured motorist coverage in the same amount as any liability coverage provided, and if such coverage is not expressly rejected, such coverage is provided by operation of law. Schumacher v. Kreiner (2000),88 Ohio St.3d 358.
In Kennison v. Progressive Ins. Co. (1996), Lake App. No. 95-L-080, the Eleventh District Court of Appeals was faced with a factual scenario similar to the instant case except that the named driver exclusion was worded differently than the one at issue in this case. The court held that the exclusion executed in that case was explicitly permitted by R.C. 3937.30, and that the public policy of providing uninsured motorist coverage is not constrained when the policy merely contains an expressly permitted exclusion.
The court stated:
 The rationale which underlies the Supreme Court's recent pronouncements regarding uninsured motorist coverage is that provisions contained within policies which are contrary to the public policy of requiring carriers to provide uninsured motorist coverage, as gleaned from the statute, must be invalidated. However, we are not faced with a provision which logically can be said to be `contrary to public policy' as espoused by the General Assembly. The legislature has specifically permitted the inclusion of policy provisions such as the one which was consensually signed by appellees in this case. R.C. 3937.30 states, in part, that:
 "As used in sections 3937.30 to 3937.39 of the Revised Code, an `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
"* * *
"(B) Insures as named insured, any of the following:
"* * *
 "(3) Either a husband or a wife who reside(s) in the same household if an endorsement on the policy excludes the other spouse from coverage under the policy and the spouse excluded signs the endorsement. * * *"
We agree with the analysis of the court in Kennison in upholding the validity of a named driver exclusion as not being violative of the uninsured motorist statute. See, also, Regal Ins. Co. v. Sammons (1991), Hamilton App. No C-910092 (R.C. 3937.30[B][3] expressly permits an insurer's exclusion of a spouse from coverage under an automobile policy).
Nevertheless, the insurer is required to offer uninsured motorist coverage, and one can reject such coverage only if the rejection is expressly and knowingly made. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 567. In Gyori, the Supreme Court of Ohio held that in order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such a rejection must be in writing and received by the insurance company prior to the commencement of the policy year. Id. at paragraph two of the syllabus. The Supreme Court of Ohio further refined the requirements for a valid rejection of uninsured motorist coverage in Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445. In Linko, the Supreme Court of Ohio held that in order for a rejection of uninsured/underinsured motorist coverage to be valid there must be a meaningful offer, one that expressly describes the coverage, lists the premium costs, and states the coverage limits. In this case, Janet Nichols accepted uninsured/underinsured motorist coverage with the exception of the named driver exclusion, and appellants have not argued that the offer of uninsured/underinsured motorist coverage was lacking in any way. Thus, we must determine if the named driver exclusion operated as a valid rejection of uninsured/underinsured motorist coverage for the specific circumstances set forth in the endorsement.
Ohio courts have upheld the validity of named driver exclusions as express rejections of uninsured/underinsured motorist coverage if the exclusions were sufficiently clear. In Wayne Mut. Ins. Co. v. Mills (1996), Wayne App. No. 95CA0083, a signed endorsement stated all insurance under the policy was null and void if the named driver drove or operated any vehicle. The court held that the signed endorsement operated as an express rejection of uninsured/underinsured motorist coverage and no coverage existed for the losses arising out of the accident. But, cf., United Services Auto. Assoc. v. Gambucci (2000), Richland App. No. 99CA65 (named driver exclusion did not preclude underinsured motorist coverage as there was no written waiver). Cf. Neiling v. Smith (2000), Lucas App. No. L-00-1151 (named driver exclusion was valid and enforceable as injured party was specifically excluded from liability coverage, but insurer's own documents showed rejection of uninsured motorist coverage was accomplished by signing other forms). See, also, Skinner v. Progressive Ins. Co. (2000), Cuyahoga App. No. 76603 (excluded driver endorsement enforceable to preclude coverage for collision damages). Contra, Brittain v. Progressive Preferred Ins. Co. (2000), Cuyahoga App. No. 77440 (named driver exclusion invalid to the extent it eliminated or excluded the insured's statutory right to uninsured motorist coverage).
Here, both Franklin and Janet Nichols executed a named driver exclusion printed on its own page and separately signed. The clear and unambiguous statement of the named driver exclusion is that "all coverage afforded by this policy is void and shall not apply to any claim or suit which occurs as the result of any vehicle being operated by * * * Franklin Nichols Husband of named insured." No ambiguity exists with respect to the scope of the exclusion. It was written in simple, clear language that could only be understood to mean that the Nichols were not entitled to any coverage, including uninsured motorist coverage, if an accident occurred as a result of Franklin Nichols operating any vehicle. Because all coverage under the policy is void if Franklin Nichols is operating a motor vehicle and an accident occurs as a result of that operation, there is no coverage of any kind available under the Economy policy for losses sustained by appellant Janet Nichols and her family. By signing the named driver exclusion, Janet and Franklin Nichols expressly rejected all coverage, including uninsured motorist coverage, if Franklin operated a motor vehicle and an accident resulted. Because Franklin was driving the Camry at the time of the accident, there was no coverage, liability or uninsured/underinsured motorist, for any of the claimed damages arising out of the accident. The coverage provided by the policy was void.
In their second argument against Economy, appellants contend that Economy is bound by the act of its agent Jack Ley who, according to appellants, assured them that he would take care of everything and that Franklin Nichols was insured while driving the Camry. Appellants cite no authority for this proposition, and the exclusion itself states otherwise. The exclusion executed by the Nichols states: "This endorsement cannot be cancelled or altered except by written notice from the Company."
An insurance agent does not by virtue of his agency acquire power to add or eliminate terms contrary to the clear language of the policy. In Ayers v. Kidney (C.A.6, 1964), 2 Ohio Misc. 1, 333 F.2d 812, 815, the Sixth Circuit Court of Appeals stated, "[a]ctually, the subject we deal with here is * * * whether a conversation between an applicant and an agent of an insurance company can add or eliminate terms contrary to the clear language of the policy. In the context of this case, we do not consider that contracts of insurance can thus be created. If they could, then indeed a named insured could, on the basis of his claim of oral communications, make an issue of the fact as to whether he had $100,000 coverage on three automobiles instead of $5,000 on one automobile as provided in a policy delivered to him." See, also, Southern American Ins. Co. v. Guaranty Nat. Ins. Co. (1986), Franklin App. No. 85AP-357 ("There is no indication that the agent had authority from plaintiff to make such a change in the policy form, especially in light of the fact that the printed coverage part form specifically provides in condition 9 that there could be no change in the terms `except by endorsement issued to form a part of this policy, signed by the President, a Vice-President or the Secretary of the Company, and countersigned by an authorized representative of the Company.' Not only was the change not signed by such an officer, but there is no indication that approval was obtained").
Here, the evidence before the trial court was that the endorsement could not be cancelled except upon written notice from Economy. Thus, regardless of any statements Jack Ley made to the Nichols, reasonable minds could only conclude that he did not have either actual or apparent authority to bind Economy by those statements. The trial court did not err in granting summary judgment in favor of Economy.
Appellants also asserted claims against Jack Ley and Jack Ley Insurance Agency for negligence in failing to obtain the insurance requested by the Nichols. Appellants contend summary judgment with respect to Jack Ley and Jack Ley Insurance Agency was also improper because of the existence of a genuine issue of material fact.
Jack Ley and Jack Ley Insurance Agency argue that they did not breach any duty to appellants because Franklin Nichols was uninsurable, appellants knew coverage could not be procured if Franklin were on the policy, and appellants could not show that Franklin could have obtained the alleged requested coverage from any source.
An insurance sales agency has a duty to exercise good faith and reasonable diligence in obtaining insurance which its customer requests. First Catholic Slovak Union v. Buckeye Union Ins. Co. (1986),27 Ohio App.3d 169, 170. When the agency knows that the customer is relying upon its expertise, the agency may have a further duty to exercise reasonable care in advising the customer. Id. When an insurance sales agency, knowing that the intended insurance company has not yet agreed to accept coverage, represents to a customer that insurance has been effected, the sales agency is liable for loss that occurs to the customer before the insurance company accepts coverage. Stuart v. Natl. Indemn. Co. (1982), 7 Ohio App.3d 63.
In this case, the Nichols have testified that Jack Ley assured them that Franklin would not be an excluded driver on the new vehicle, the Toyota Camry, and they relied to their detriment on those verbal assurances. Jack Ley has testified that the Nichols did not ask him to remove the named driver exclusion. This is a disputed material fact that cannot be resolved upon a motion for summary judgment.
Jack Ley and Jack Ley Insurance Agency also argue that by the time of the accident the Nichols should have received a renewal policy, and they failed to read it. If they had read the policy, Jack Ley contends that they would have seen that the exclusion had not been taken off the policy. Therefore, Jack Ley claims that the Nichols' loss was caused by their own acts or omissions.
The Nichols are not barred by law from recovery because they had not read their renewal policy and because they did not question their coverage before the loss. Those facts, while relevant to the question of comparative negligence, do not negate the presence of a prima facie case of negligence. In Bedillion v. Tri-County Ins. Agency (1993), Summit App. No. 15722, the owners of a beer and wine drive-thru purportedly requested "full coverage," including liquor liability coverage, but never read their policy or questioned their coverage before loss. The insurance agents denied any such discussion, and the matter was tried to a jury which found the plaintiffs forty percent negligent and the insurance agent and agency sixty percent negligent.
Viewing the evidence most strongly in favor of appellants, the nonmoving party, we conclude that summary judgment on the negligence claim was improper. Accordingly, appellants' assignment of error is overruled with respect to Economy and sustained in part with respect to the negligence claim against Jack Ley and Jack Ley Insurance Agency.
For the above reasons, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the Franklin County Court of Common Pleas for further proceedings consistent with this opinion.
Judgment affirmed in part,
reversed in part; cause remanded.
TYACK, P.J., and PETREE, J., concur.