DECISION.
{¶ 1} Appellants, Craig Roberts, Capital Real Estate Partners, LLC ("CREP"), Corporate Construction and Contracting LLC ("CCC"), Capital Administrative Services, Inc. ("CAS"), and Capital Property Management LLC ("CPM"), sustained losses in excess of $1,000,000 due to fraudulent conduct by Dan Schneider, the co-owner of CCC. Appellee Cincinnati Insurance Company denied Roberts's claim for indemnity under appellants' employee-dishonesty insurance policy because the losses were sustained prior to the effective date of the policy.
 {¶ 2} Appellants sued Linda E. Maichl, an attorney, and Benesch, Friedlander, Coplan Aronoff ("Benesch"), her former law firm, for legal malpractice in setting up CCC as a limited liability company in January 2000. Appellants' additional claims against Schiff, Kreidler-Shell, Inc. ("SKS"), an insurance agency, for negligence, breach of fiduciary duty, and negligent misrepresentation were based upon SKS's alleged failure to ensure that appellants were adequately insured. Appellants' claims against Cincinnati Insurance for negligence, breach of contract, and bad faith were based on Cincinnati Insurance's denial of their claim under a July 2000 policy that provided coverage for employee dishonesty.
 {¶ 3} Appellants now appeal from the trial court's entry of summary judgment in favor of Maichl, Benesch, SKS, and Cincinnati Insurance. We affirm.
 Background Facts {¶ 4} In 1999, Roberts had directed SKS to obtain insurance coverage for his company, CREP, from the Ohio Casualty Group. The Ohio Casualty policy was effective from July 27, 1999, to July 27, 2000. Ohio Casualty had offered Roberts optional coverage for employee dishonesty, but Roberts declined the coverage.
 {¶ 5} In January 2000, Roberts hired Maichl and Benesch to form CCC, an Ohio limited liability company whose members would include Roberts and his business partner, Dan Schneider. Roberts and Schneider told Maichl that they wanted 55% of CCC to be owned by CREP, and 45% by Bluegrass Management, Schneider's company. The articles of organization of CCC were filed on January 27, 2000.
 {¶ 6} Roberts met with Timothy Tepe, an insurance agent with SKS, to discuss insurance coverage for CCC. Roberts told Tepe to place the insurance with Ohio Casualty. Tepe attempted to do so, but Ohio Casualty refused to bind the coverage because CCC was a "paper corporation." Tepe then contacted Cincinnati Insurance, which agreed to bind the coverage. The Cincinnati Insurance policy became effective on January 21, 2000. The policy did not contain employee-dishonesty coverage.
 {¶ 7} In July 2000, Roberts instructed SKS to apply to Cincinnati Insurance for insurance coverage for each of Roberts's companies, including employee-dishonesty coverage for his real-estate management company, CPM. Cincinnati Insurance agreed to provide the requested coverage, which was to become effective on July 27, 2000, the end of the Ohio Casualty policy period.
 {¶ 8} On July 31, 2000, just four days after appellants' employee-dishonesty coverage became effective, Schneider admitted to Roberts that he had been falsifying CCC's financial records to show fictitious profits. Before July 27, 2000, Schneider had used the phony profits to justify not only salary payments to himself but also the distribution of profits to Bluegrass Management.
 {¶ 9} In August 2000, Roberts filed an action against Schneider in the United States District Court for the Southern District of Ohio. In December 2000, a judge entered an agreed judgment in the amount of $1,137,711.33 in favor of CCC and against Schneider.
 {¶ 10} On September 7, 2000, appellants furnished a sworn proof of loss to Cincinnati Insurance based upon Schneider's theft. On December 20, 2000, Cincinnati Insurance sent the first of three letters denying appellants' claim. Cincinnati Insurance sent two more denial letters on March 30, 2001, and October 12, 2001. On March 27, 2002, Roberts and his companies filed the present action.
 Our Standard of Review {¶ 11} We review a grant of summary judgment de novo.[1] In this case, Maichl, Benesch, SKS, and Cincinnati Insurance were entitled to summary judgment only if (1) there was no genuine issue of material fact; (2) they were entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of appellants, and that conclusion was adverse to appellants.[2]
 {¶ 12} In pursuing summary judgment, the moving party has the burden to identify "those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims."[3] When the moving party discharges that burden, the nonmoving party then has "a reciprocal burden to set forth specific facts by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists."[4]
 Appellants' Claims Against SKS {¶ 13} In their first assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of SKS.
 Negligence and Breach of Fiduciary Duty {¶ 14} Appellants claim that a fiduciary relationship existed between SKS and appellants, and that, as a result, the trial court should have held SKS to a heightened standard of care. The Supreme Court of Ohio has defined a "fiduciary relationship" as one "in which special confidence and trust is reposed in the fidelity and integrity of another resulting in a position of superiority or influence, acquired by virtue of this special trust."[5] A fiduciary relationship may be created out of an informal relationship only when both parties understand that a special trust or confidence has been reposed.[6]
 {¶ 15} "While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance."[7] Thus, the relationship between an insurance agent and an insured, without more, is not a fiduciary relationship, but an ordinary business relationship.
 {¶ 16} In this case, the record demonstrates that the relationship between SKS and appellants was nothing more than an ordinary business relationship between an insurance agent and its client. Accordingly, SKS had a duty to exercise good faith in obtaining the insurance policies requested by appellants, but it had no heightened duty as asserted by appellants.[8] The evidence shows that Tepe, on behalf of SKS, acquired the insurance requested by Roberts for his companies. In the absence of a fiduciary relationship, SKS had no duty to counsel Roberts about the advisability of employee-dishonesty coverage or to otherwise pursue the subject. Because the record contains no evidence indicating that SKS breached its duty to appellants or that SKS owed a fiduciary duty to appellants, we hold that the trial court properly granted summary judgment in favor of SKS on appellants' claims of negligence and breach of fiduciary duty.
 Negligent Misrepresentation {¶ 17} Appellants also claim that Tepe had provided false information to appellants when he stated that they were adequately insured. In order to prove a claim of misrepresentation, a plaintiff must show (1) a false representation by another, (2) made intentionally or negligently, (3) on which the plaintiff reasonably relied (4) to his loss and detriment.[9]
 {¶ 18} Initially, we note that the alleged misrepresentation by SKS regarding the adequacy of coverage did not demonstrably cause any damage to appellants. Even had the January 2000 insurance policy contained employee-dishonesty coverage, appellants' losses would not have been covered under the policy because Schneider was a partner in CCC, not an employee. Moreover, while SKS had a duty to obtain the requested insurance coverage, appellants had a corresponding duty to examine the coverage provided, and they were charged with knowledge of the contents of their own insurance policies.[10] In this case, Roberts could not argue that he had justifiably relied upon the representation by SKS that the companies were adequately insured, where Roberts himself admitted he had not read his insurance policies, which made no reference to employee-dishonesty coverage. Accordingly, we hold that the trial court properly granted summary judgment in favor of SKS on appellants' claim for negligent misrepresentation. We overrule the first assignment of error.
 Appellants' Malpractice Claims against Maichl and Benesch {¶ 19} The trial court granted summary judgment in favor of Maichl and Benesch by determining that the one-year statute of limitations for a legal-malpractice claim had expired prior to the filing of the complaint. In their second assignment of error, appellants contend that the trial court erred in doing so.
 {¶ 20} An action for legal malpractice accrues either (1) when there is a cognizable event by which the plaintiff discovers or should discover the injury giving rise to a claim and is put on notice of the need to pursue possible remedies against the attorney; or (2) when the attorney-client relationship for that particular transaction terminates, whichever occurs later.[11] An injured person does not need to be aware of the full extent of his or her injuries. It is enough that some "noteworthy" event occur that would alert a reasonable person that an improper legal practice has taken place.[12]
 {¶ 21} In their complaint filed March 27, 2002, appellants alleged that Maichl and Benesch had committed malpractice by failing to advise them about insurance and liability issues relating to the start-up of a new company, and by failing to confirm that Bluegrass Management was a viable entity. We agree with the trial court that several cognizable events occurred more than one year before the filing of the complaint to put appellants on notice of a possible injury resulting from Maichl's and Benesch's legal representation.
 {¶ 22} The record reveals that appellants knew as early as July 2000 that Maichl and Benesch had not advised them to obtain employee-dishonesty coverage at the time that CCC was formed. In July 2000, Roberts obtained employee-dishonesty coverage for CCC. Shortly thereafter, Roberts learned of Schneider's fraudulent conduct. Then, in December 2000, Cincinnati Insurance denied appellants' claims for losses resulting from Schneider's misconduct, in part because the embezzlement had occurred before the employee-dishonesty coverage had taken effect in July 2000. The record further reveals that by August 21, 2000, appellants had received a copy of the partnership agreement forming Bluegrass Management in May 2000. At that point, appellants knew or should have known that Bluegrass Management was not a corporate entity at the time CCC was formed in January 2000.
 {¶ 23} Thus, the one-year statute of limitations for appellants' legal-malpractice claim began to run, at the latest, in December 2000. Accordingly, we hold that the statute of limitations for the claim had expired well before appellants filed their complaint in March 2002. We overrule the second assignment of error.
 Appellants' Claims Against Cincinnati Insurance {¶ 24} In their complaint, appellants claimed that Cincinnati Insurance had, in bad faith, breached its July 2000 insurance contract by denying coverage for losses sustained due to Schneider's actions. Appellants also claimed that Cincinnati Insurance was vicariously liable for the negligent acts of SKS.
 Breach of Contract and Bad Faith {¶ 25} Appellants argue that the July 2000 policy provided coverage for losses sustained due to Schneider's misconduct. The Supreme Court of Ohio has held that "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."[13] In this case, the policy clearly excluded coverage for losses sustained due to the misconduct of a business partner. Moreover, the policy covered only those losses sustained through acts committed during the policy period, beginning July 27, 2000. The evidence in the record indicated that the misconduct here occurred before July 27, 2000. Therefore, appellants failed to identify any losses sustained during the policy period, and they further failed to demonstrate that Cincinnati Insurance had not acted in good faith in denying their claim. Accordingly, we hold that the trial court properly granted summary judgment in favor of Cincinnati Insurance on appellants' claims for breach of contract and bad faith.
 Vicarious Liability {¶ 26} Appellants last argue that the trial court erred in granting summary judgment in favor of Cincinnati Insurance on their claim that the company was vicariously liable for SKS's failure to offer employee-dishonesty coverage in January 2000. Even if we assume that an agency relationship existed between SKS and Cincinnati Insurance at that time, our holding that SKS breached no duty to appellants renders appellants' vicarious-liability claim against Cincinnati Insurance meritless.
 {¶ 27} Accordingly, we overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman and Sundermann, JJ., concur.
[1] See Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243.
[2] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[3] See Drescher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264; see, also, Civ.R. 56(C).
[4] Morris v. Ohio Casualty Ins. Co. (1988),35 Ohio St.3d 45, 47, 517 N.E.2d 904.
[5] Ed Schory Sons, Inc. v. Francis, 75 Ohio St.3d 433,1996-Ohio-194, 662 N.E.2d 1074.
[6] Id.
[7] Nielsen Enterprises, Inc. v. Insurance Unlimited Agency,Inc. (May 8, 1986), 10th Dist. No. 85AP-781.
[8] See First Catholic Slovak Union v. Buckeye Union Ins. Co.
(1986), 27 Ohio App.3d 169, 499 N.E.2d 1303; Heights DrivingSch., Inc. v. Motorists Ins. Co., 8th Dist. No. 81727, 2003-Ohio-1737.
[9] See Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1001.
[10] See Craggett v. Adell Ins. Agency (1993),92 Ohio App.3d 443, 635 N.E.2d 1326.
[11] See Zimmie v. Calfee, Halter Griswold (1989),43 Ohio St.3d 54, 538 N.E.2d 398, syllabus; R.C. 2305.11(A).
[12] See Zimmie, supra, at 58, 538 N.E.2d 398; Rosenberg v.Atkins (Oct. 5, 1994), 1st Dist. No. C-930259; Harper v. Imm
(May 5, 1999), 1st Dist. No. C-980768.
[13] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 219,2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11.