OPINION
{¶ 1} Plaintiff-appellant, Jack R. Advent, the executor of the estate of Valijean D. Advent, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Dennis O. Norton. For the following reasons, we affirm.
 {¶ 2} In early 1989, the Advents decided to seek automobile insurance from Allstate Insurance Company ("Allstate") instead of continuing their policy with State Auto Insurance Company ("State Auto"). They met with Norton, an insurance agent who represented Allstate, to determine the parameters of their new policy. Although Jack Advent does not remember this meeting, Norton testified that, during the meeting, he discussed with the Advents the various coverages contained in their State Auto policy and compared the State Auto coverages to those Allstate offered.
 {¶ 3} With regard to liability coverage, Norton told the Advents that Allstate could supply them with higher coverage limits than those in their State Auto policy for less money. Due to the lower premium Allstate offered, the Advents chose to increase their liability coverage limits to $300,000 per individual and $500,000 per occurrence. With regard to uninsured/underinsured motorist ("UM/UIM") coverage, Norton explained to the Advents that they could continue their current coverage limits, or they could increase their limits as they had done with their liability coverage limits. Based upon the premiums Norton quoted them for UM/UIM coverage, the Advents chose to keep their coverage limits at $50,000 per individual and $100,000 per occurrence.[1]
 {¶ 4} On March 12, 1989, Allstate issued an automobile insurance policy to the Advents with the coverage limits they had chosen. Throughout the ensuing years, the policy renewed every six months, for a total of 26 renewals. During that time period, the Advents intermittently contacted Norton or his associate to discuss minor issues, such as the removal and addition of automobiles to the policy and the extension of coverage to the Advent children as they began driving. Neither of the Advents ever sought to increase the coverage limits established in the original policy.
 {¶ 5} On September 29, 2002, Valijean Advent died from the injuries she received in an automobile accident caused by the negligence of Scott D. Rude. At the time of the accident, Rude was insured under an automobile insurance policy with liability coverage limits of $100,000 per individual and $300,000 per occurrence. With the consent of Allstate, Jack Advent settled all claims against Rude in exchange for a payment equal to the $100,000 per individual policy limit.
 {¶ 6} After settling with Rude and his insurer, Advent sought underinsured motorist coverage for his wife's death from Allstate. However, Allstate denied Advent's claim because the amount of the settlement exceeded the $50,000 per individual UM/UIM coverage limit. Claiming he was entitled to UM/UIM coverage limits equal to his liability coverage limits, Advent filed suit against Allstate and Norton on September 23, 2004. In his complaint, Advent averred that Norton was negligent and breached his fiduciary duty to the Advents by: (1) failing to obtain appropriate UM/UIM coverage limits, (2) failing to explain the purpose, cost, risks, and advantages of UM/UIM coverage, as well as the ramifications of having limits of only $50,000 per person and $100,000 per occurrence, and (3) failing to continue to advise the Advents regarding UM/UIM coverage.
 {¶ 7} On June 29, 2005, Norton moved for summary judgment, arguing that he had no legal duty to force the Advents to purchase UM/UIM coverage with higher limits than those they chose and that, to the extent that he owed any legal duty to the Advents, he did not breach that duty. The trial court granted Norton's motion, and found that Advent could not hold Norton responsible for his and his wife's decision to carry only $50,000/$100,000 in UM/UIM coverage.
 {¶ 8} On July 15, 2005, the trial court reduced its decision to judgment. Recognizing that Advent's claim against Allstate remained pending, the trial court added Civ.R. 54(B) "no just cause for delay" language to the judgment entry, thus allowing Advent to file the instant appeal.
 {¶ 9} On appeal, Advent assigns the following error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE NORTON WHEN GENUINE ISSUES OF MATERIAL FACT REMAIN.
 {¶ 10} By his only assignment of error, Advent argues that Norton owed a fiduciary duty and/or a duty of reasonable care to him and his wife as their insurance agent, and that questions of fact remain regarding whether he breached those duties. We disagree.
 {¶ 11} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel.Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181,183.
 {¶ 12} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id.; Vahila v. Hall, 77 Ohio St.3d 421, 429. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support the nonmoving party's claims. Dresher, supra, at 293. If the moving party meets this initial burden, then the non-moving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. Id.
 {¶ 13} Advent first argues that he and his wife formed a fiduciary relationship his Norton, and that Norton breached his fiduciary duty by failing to properly advise them about UM/UIM coverage. A "fiduciary" is "`a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'" Groob v. Keybank,108 Ohio St.3d 348, 2006-Ohio-1189, at ¶ 16, quoting Strock v.Pressnell (1988), 38 Ohio St.3d 207, 216. A "fiduciary relationship" forms when "`special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Id., quoting In re Terminationof Emp. of Pratt (1974), 40 Ohio St.2d 107, 115.
 {¶ 14} Generally, the relationship between an insurance agent and his client is not a fiduciary relationship, but rather, an ordinary business relationship. Slovak v. Adams (2001),141 Ohio App.3d 838, 846; Gillin v. Indiana Ins. Co. (Oct. 30, 1998), Montgomery App. No. CA17108. See, also, NielsenEnterprises, Inc. v. Ins. Unlimited Agency, Inc. (May 8, 1986), Franklin App. No. 85AP-781 ("While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance."). However, a fiduciary relationship can arise from such an informal relationship when both parties understand that a special trust or confidence has been reposed.Ed Schory Sons, Inc. v. Society Natl. Bank,75 Ohio St.3d 433, 442, 1996-Ohio-194; Hoyt v. Nationwide Mut. Ins. Co.,
Franklin App. No. 04AP-941, 2005-Ohio-6367, ¶ 30-31.
 {¶ 15} Here, Advent testified in his affidavit that he relied upon Norton to advise him of the appropriate insurance coverage to adequately protect himself and his family. Advent, however, never communicated his reliance to Norton. Indeed, according to Advent's own testimony, he only talked to Norton about minor matters — changing the home address, covered autos, and licensed drivers designated in the policy. Nothing in these communications indicated that the Advents reposed a special trust or confidence in Norton. Thus, the evidence does not demonstrate the bilateral understanding required to convert an arms-length business relationship into a fiduciary one.
 {¶ 16} Also, the 13-year length of the parties' relationship does not, in these circumstances, establish a fiduciary relationship. Although Norton was the Advents' insurance agent for a substantial period, their relationship never varied from the ordinary insurance agent-client relationship. Therefore, we conclude that a fiduciary relationship never existed between the Advents and Norton, and thus, Norton never owed them a fiduciary duty.
 {¶ 17} Advent next argues that Norton owed him and his wife a duty of reasonable care. Ohio law imposes a duty to exercise reasonable care on insurance agents in two instances. First, an insurance agent owes his client a duty to exercise good faith and reasonable diligence in undertaking to acquire the coverage that his client requests. Damon's Missouri, Inc. v. Davis (1992),63 Ohio St.3d 605, 609, fn. 2, citing First Catholic Slovak Unionv. Buckeye Union Ins. Co. (1986), 27 Ohio App.3d 169, 170;Nichols v. Progressive Ins. Co., Franklin App. No. 01AP-899, 2002-Ohio-3058, at ¶ 47. If an agent negligently fails to procure the requested insurance and the client suffers a loss because of the want of the coverage, then the agent is liable to the client in the amount the client would have received if the coverage had existed. Ruggiero v. Nationwide Ins., Cuyahoga App. No. 86431,2006-Ohio-808, at ¶ 20; Minor v. Allstate Ins. Co. (1996),111 Ohio App.3d 16, 21. Second, if an agent knows that the client is relying upon his expertise, then the agent owes a further duty to exercise reasonable care in advising the client. Rose v.Landon, Warren App. No. CA2004-06-066, 2005-Ohio-1623, at ¶ 16;Nichols, supra, at ¶ 47; First Catholic Slovak Union, supra, at 170.[2]
 {¶ 18} In the case at bar, Advent asserts that Norton negligently failed to secure for him and his wife an insurance policy with the UM/UIM coverage limits they requested. Norton testified that the Advents chose UM/UIM coverage limits when they met with him in early 1989, and that Allstate issued them a policy reflecting their wishes. Advent cannot rebut this testimony, as he cannot recall what UM/UIM coverage limits he and his wife requested. Thus, given Norton's uncontroverted evidence, reasonable minds could only conclude that Norton did not breach his duty to obtain the insurance coverage the Advents requested.
 {¶ 19} Advent also asserts that Norton negligently advised him and his wife when Norton failed to explain UM/UIM coverage and the ramifications of choosing $50,000/$100,000 UM/UIM coverage limits. As we stated above, a duty to advise only arises if an agent knows that a client is relying upon his expertise. Although the Advents may have relied upon Norton to advise them, they never communicated their reliance to Norton. Without knowledge that the Advents were relying upon his expertise, Norton did not have a duty to advise them regarding UM/UIM coverage.
 {¶ 20} During oral argument, Advent also argued that Norton owed him and his wife a duty to sell them a policy with equal liability and UM/UIM coverage limits, or alternatively, to obtain a written waiver. Advent asserts that this duty arose from former versions of R.C. 3937.18, which until October 31, 2001 required that liability and UM/UIM coverage limits be identical, unless certain requirements were met. See Gyori v. Johnston Coca-ColaBottling Group, 76 Ohio St.3d 565, 1996-Ohio-358; Linko v.Indemn. Ins. Co., 90 Ohio St.3d 445, 2000-Ohio-92. We find this argument unavailing. R.C. 3937.18, as it is in effect today and in its previous incarnations, placed requirements upon the insurance companies writing the policies, not the agents who sold them. See, e.g., Abate v. Pioneer Mut. Cas. Co. (1970),22 Ohio St.2d 161, 164 ("The language of the statute makes the uninsured motorist coverage imperative in that it requires the insurer,
as a condition to the issuance of policy, to provide that coverage in the policy." [Emphasis added]); Gyori, supra, at 567 ("It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state." [Emphasis added]). Therefore, we find that Norton did not owe the Advents any duty arising from R.C. 3937.18.
 {¶ 21} Accordingly, because Norton did not owe the Advents a fiduciary duty or a duty to exercise reasonable care in advising them, and he did not breach his duty to obtain the requested insurance, we overrule Advent's assignment of error.
 {¶ 22} For the foregoing reasons, we overrule Advent's only assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and French, JJ., concur.
[1] Despite his deposition testimony that he could not remember the meeting with Norton, Advent maintained in a later-filed affidavit that Norton never discussed UM/UIM coverage during the meeting. Besides this one detail, Advent does not contradict Norton's testimony about the meeting. Thus, we accept Norton's testimony regarding this initial meeting as undisputed evidence, with the exception of his testimony as to his explanation of UM/UIM coverage.
[2] Although Nielsen Enterprises, Inc., supra, suggests that an insurance agent owes his or her clients a general duty of reasonable care as a matter of law, Nichols, supra, supercedes it by limiting an insurance agent's duty of reasonable care to the instances specified above.