OPINION
{¶ 1} Plaintiffs-appellants, Craig A. Nichols, Carla Nichols, and Dairy Queen of Marietta, Inc. ("DQM"), appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, State Automobile Insurance Company ("State Auto"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} This case arises from a motor vehicle accident involving Craig Nichols, which occurred on April 30, 2001, in Washington County, Ohio. The accident was allegedly caused by the negligence of Doris Lightfritz. At the time of the accident, Mr. Nichols was operating his personal 1999 Honda Magna motorcycle and allegedly acting within the course and scope of his employment with DQM.[1]
 {¶ 3} It is undisputed that plaintiffs originally filed an action in the Franklin County Court of Common Pleas, under case No. 03CVC04-4218, against State Auto, Grange Mutual Casualty Company, Ohio Mutual Insurance Group, and the alleged tortfeasor, Doris Lightfritz. In that complaint, it was alleged that uninsured/underinsured motorist ("UM/UIM") coverage was provided under a "Business Auto Policy" that State Auto issued to DQM, bearing policy No. 9331868 (hereinafter "auto policy"). Defendant State Auto moved for summary judgment, arguing that the policy at issue did not include UM/UIM coverage. The trial court granted defendant State Auto's motion for summary judgment. Plaintiffs sought to amend their complaint, but their requests were denied. Thereafter, plaintiffs dismissed that case.
 {¶ 4} Subsequently, on March 11, 2004, plaintiffs filed a complaint against Michael D. Schwendeman, Schwendeman Agency, Inc., and State Auto. That action was filed under case No. 04CVC03-2866. With leave of the trial court, plaintiffs filed a first amended complaint, adding the Ohio Bureau of Workers' Compensation ("BWC") as a defendant. In that complaint, plaintiffs alleged that the auto policy and a "Commercial Umbrella Policy" issued to DQM, bearing policy No. 9326488-05 (hereinafter "umbrella policy"), provided UM/UIM coverage.
 {¶ 5} On December 10, 2004, defendant State Auto filed a motion for summary judgment, arguing its entitlement to judgment as a matter of law based on the undisputed facts. On December 27, 2004, plaintiffs filed a memorandum contra the motion for summary judgment, and defendant State Auto filed a reply on January 7, 2005. On March 7, 2005, the trial court granted defendant State Auto's motion for summary judgment, finding, inter alia, that State Auto was not required, pursuant to R.C. 3937.18, to offer UM/UIM coverage in connection with the policies at issue in this matter. On June 19, 2005, plaintiffs filed a notice of dismissal of defendants Michael D. Schwendeman and Schwendeman Agency, Inc. On August 4, 2005, the trial court filed an entry terminating the case. On September 1, 2005, plaintiffs filed a notice of dismissal of BWC. On the same day, plaintiffs filed a notice of appeal.
 {¶ 6} In this appeal, plaintiffs have set forth the following single assignment of error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE STATE AUTOMOBILE INSURANCE COMPANY.
 {¶ 7} By their single assignment of error, plaintiffs argue that the trial court erred in granting summary judgment in favor of State Auto. Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the movant is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; Stateex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 8} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421,430; Civ.R. 56(E).
 {¶ 9} Plaintiffs' arguments in this appeal relate to the issue of whether UM/UIM coverage was provided under the auto policy. They raise no arguments relating to the umbrella policy. The declarations page of the auto policy at issue in this case set forth the coverage under that policy. Symbols "08" and "09" designated the coverage for the auto policy, and were defined by the policy as follows:
8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your employees or partners or members of their households.
9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
 {¶ 10} In their brief, plaintiffs outline various factors a business may consider in determining the type and scope of insurance to obtain. For example, plaintiffs assert that when a business owns no vehicles, but vehicles are used in connection with the business, then the business reasonably will seek coverage to protect the business from liability. To that end, DQM sought liability coverage from State Auto for vehicles described in symbols 8 and 9. In that regard, State Auto does not dispute that liability coverage was provided under the auto policy.
 {¶ 11} Furthermore, plaintiffs argue that, in addition to liability coverage, it was their intention that the auto policy provide UM/UIM coverage. Notwithstanding that assertion, it is undisputed that the auto policy does not expressly provide for UM/UIM coverage. Here, plaintiffs argue that the UM/UIM coverage arises by operation of law. State Auto disputes that contention.
 {¶ 12} The statutory law in effect on the date the policy was issued is the law to be applied. Benedict v. State Auto. Mut.Ins. Co., Franklin App. No. 03AP-879, 2004-Ohio-2497, at ¶ 6, citing Ross v. Farmer Ins. Group of Cos. (1998),82 Ohio St.3d 281, 287. Therefore, R.C. 3937.18, as amended by S.B. 57, which was effective November 2, 1999, controls the rights and obligations of the parties herein.
 {¶ 13} Former R.C. 3937.18(A) required an auto insurer to offer UM/UIM coverage for every "automobile liability or motor vehicle liability policy." See Benedict, at ¶ 7.[2] If the insurer failed to properly offer UM/UIM coverage, it arose by operation of law. See id. Thus, the threshold issue is whether the policy was an "automobile liability or motor vehicle liability policy," and, therefore, subject to the aforementioned requirement of that section. R.C. 3937.18, as amended by S.B. 57, provided, in pertinent part, as follows:
(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specificallyidentified in the policy of insurance;
(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section.
(Emphasis added.)
 {¶ 14} State Auto, citing Pyros v. Loparo, Franklin App. No. 03AP-1146, 2005-Ohio-577, and Benedict, supra, argues that this court has already determined that insurance policies only providing coverage for "hired" and "nonowned" motor vehicles were not subject to former R.C. 3937.18 because motor vehicles were not "specifically identified" in the insurance policy.
 {¶ 15} In Benedict, the plaintiff argued that because the policy at issue in that case provided liability coverage for "hired" and "non-owned" motor vehicles, it qualified as a "motor vehicle liability policy" as defined by former R.C. 3937.18(L). This court rejected that argument, finding that "the categories of `hired' and `non-owned' automobiles in a businessowners [sic] policy do not qualify as `specifically identified' vehicles, pursuant to R.C. 3937.18(L)." Id. at ¶ 21. In Pyros, this court applied the same reasoning and found that an insurance policy containing a "non-owned auto liability coverage" endorsement was not an "automobile liability or motor vehicle liability policy of insurance," as that term was defined in former R.C. 3937.18(L), because it did not "specifically identify" motor vehicles. Id. at ¶ 35 and 38.
 {¶ 16} Additionally, we note that this court has stated that "[i]n order to qualify as an `automobile liability or motor vehicle liability policy of insurance' under R.C. 3937.18(L)(1), a policy must `precisely, particularly and individually identif[y]' the motor vehicles covered." McNeely v. PacificEmployers Ins. Co., Franklin App. No. 02AP-1217, 2003-Ohio-2951, at ¶ 26, citing Gibbons-Barry v. Cincinnati Ins. Cos., Franklin App. No. 01AP-1437, 2002-Ohio-4898, at ¶ 44.
 {¶ 17} Plaintiffs argue that this court's reasoning inBenedict, supra, does not apply in the case at bar. According to plaintiffs, the Benedict case is distinguishable from this case because that case involved a business owners policy, not a business auto policy, as found here. Plaintiffs argue that the policy in this case is limited to covering motor vehicles and, therefore, meets the definition contained in former R.C.3937.18(L)(1). In that regard, plaintiffs argue that the business owners policy in Benedict "incidentally covered hired and non-owned vehicles." (Plaintiffs' brief, at 9.)
 {¶ 18} In addition, plaintiffs argue that the Supreme Court of Ohio's decisions in Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660, Linko v. Indemnity Ins. Co. ofN. Am. (2000), 90 Ohio St.3d 445, and Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, have "substantial impact on the coverage issues in this case." (Plaintiffs' brief, at 7.)
 {¶ 19} In Linko, the Supreme Court of Ohio outlined the requirements for a valid offer and rejection of UM/UIM coverage under former R.C. 3937.18. In Scott-Pontzer, the court held that an uninsured motorist endorsement that identifies "you" as the named insured where "you" refers to a corporation must extend coverage to an employee outside the course and scope of employment. In Galatis, the court limited the holding inScott-Pontzer, stating, "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id., paragraph two of the syllabus.
 {¶ 20} The central issue in this case is whether State Auto was required, under former R.C. 3937.18, to offer UM/UIM coverage in connection with the auto policy issued to DQM, not whether there was a valid offer and rejection of UM/UIM coverage under that section. Additionally, it is undisputed that the auto policy at issue in this case did not expressly provide UM/UIM coverage. Furthermore, resolution of the issue of whether Mr. Nichols was acting within the course and scope of employment when the accident occurred is not pertinent to the central issue in this case. Thus, plaintiffs' reliance upon Scott-Pontzer, Linko, andGalatis is misplaced.
 {¶ 21} Plaintiffs' attempt to distinguish Benedict is also not persuasive, as the nature of the policy is determined by the type of coverage it provides, not by the label affixed by the insurer. Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,546, citing St. Paul Fire Marine Ins. Co. v. Gilmore (1991),168 Ariz. 159, 165, 812 P.2d 977. Moreover, simply analyzing whether a particular insurance policy is limited to covering motor vehicles, or whether the motor vehicle coverage is "incidental" to other coverage, was not the standard set forth by the General Assembly for determining whether an insurer was required to offer UM/UIM coverage in connection with the insurance policy. See former R.C. 3937.18(L).
 {¶ 22} We find that the reasoning applied by this court inBenedict, Pyros, and McNeely, is directly applicable to the dispositive issue in this case. In the case at bar, the auto policy provided liability coverage for "hired" and "nonowned" autos. It does not "precisely, particularly and individually identify" the motor vehicles covered, and, therefore, is not an "automobile liability or motor vehicle liability policy of insurance," as that term was defined in former R.C. 3937.18(L). Therefore, State Auto was not required to offer UM/UIM coverage. As a result, UM/UIM coverage does not arise by operation of law. Therefore, the trial court did not err in granting summary judgment in favor of defendant State Auto, and we accordingly overrule plaintiffs' single assignment of error.
 {¶ 23} Having overruled plaintiffs' single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown and McGrath, JJ., concur.
[1] The Nichols owned, operated, and were employed by DQM.
[2] Effective October 31, 2001, S.B. 97 amended R.C. 3937.18, and eliminated the mandatory requirement that an insurer offer UM/UIM coverage for every automobile liability or motor vehicle liability policy.