OPINION
{¶ 1} Plaintiffs-appellants, Craig A. Nichols ("Nichols"), Carla Nichols, and Dairy Queen of Marietta, Inc. ("Dairy Queen Marietta") (collectively, "appellants"), appeal from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendants-appellees, Michael D. Schwendeman ("Schwendeman"), and Schwendeman Agency, Inc. ("Schwendeman Agency") (collectively, "appellees"), on *Page 2 
appellants' claims for negligence, breach of fiduciary duty, and misrepresentation. For the following reasons, we affirm.
 {¶ 2} On April 30, 2001, Nichols was injured when a vehicle driven by Doris Lightfritz struck the motorcycle he was operating. Nichols recovered payment from Lightfritz's insurer for the $100,000 limit of Lightfritz's liability policy. Thereafter, appellants sought underinsured motorist ("UIM") coverage under insurance policies that State Automobile Insurance Company ("State Auto") issued to Dairy Queen Marietta, a business owned and operated by appellants.
 {¶ 3} At all relevant times, Schwendeman was the president and an owner of Schwendeman Agency, a licensed insurance agent in the state of Ohio. In 1995, William Holschuh requested a quote from Schwendeman for commercial coverage for Dairy Queen of Washington County, Inc., the predecessor company to Dairy Queen Marietta. Schwendeman obtained coverage for Dairy Queen of Washington County, Inc. through State Auto. The State Auto policies provided "commercial property coverage including glass coverage, commercial general liability coverage including employer's liability coverage, inland marine coverage, business auto coverage for hired and non-owned autos including uninsured motorists coverage, and commercial umbrella coverage." (Schwendeman Aff. at ¶ 4.) Nichols, who was neither an officer nor an employee of Dairy Queen of Washington County, Inc., played no role in the procurement of the State Auto coverage. The State Auto policies remained in effect for Dairy Queen of Washington County, Inc. and, later, for Dairy Queen Marietta until 2002, when State Auto cancelled the policies. *Page 3 
 {¶ 4} Dairy Queen Marietta was formed in 1996 with Nichols and his wife, Carla, as its sole shareholders and officers. Nichols, who immediately assumed responsibility for procuring insurance coverage upon the formation of Dairy Queen Marietta, reviewed the State Auto policies in place and made no changes to the coverage. At that time, the declarations page of the State Auto policies listed the coverages provided, including liability coverage in the amount of $1,000,000 per accident for hired and non-owned autos and UIM coverage with the same limits. Dairy Queen Marietta received copies of the State Auto renewal policies each year, and Nichols read the declarations pages and discussed the coverages provided with Schwendeman.
 {¶ 5} When the State Auto policies renewed for the period from June 5, 1999 to June 5, 2000, the Schwendeman Agency informed Dairy Queen Marietta that UIM coverage was no longer available for hired and non-owned vehicles. The Schwendeman Agency sent a letter to Dairy Queen Marietta, dated May 11, 1999, stating: "Please note that Uninsured motorist coverages [are] no longer available on hired and non owned vehicles. If you would like to make any changes you can either call in or write us a note, whatever is most convenient for you." Unlike prior policy periods, the declarations page for the June 5, 1999 to June 5, 2000 policy period does not reflect that the State Auto policies include UIM coverage, nor does it reflect a premium for such coverage. Despite the absence of UIM coverage on the declarations pages and the Schwendeman Agency's letter advising Dairy Queen Marietta of the unavailability of UIM coverage, no one affiliated with Dairy Queen Marietta contacted Schwendeman or the Schwendeman Agency to request alternate insurance, including *Page 4 
UIM coverage. According to Schwendeman, UIM coverage for hired and non-owned vehicles was not available in the marketplace at that time.
 {¶ 6} On March 11, 2004, appellants filed a complaint in the Franklin County Court of Common Pleas against appellees and State Auto for UIM coverage under the policies issued to Dairy Queen Marietta. The trial court granted summary judgment in favor of State Auto, finding, inter alia, that R.C. 3937.18 did not require State Auto to offer UIM coverage in connection with the State Auto policies. On July 19, 2005, appellants voluntarily dismissed their claims against appellees, and, on August 10, 2006, this court affirmed the trial court's entry of summary judgment in favor of State Auto. See Nichols v. State Auto Ins. Co., Franklin App. No. 05AP-915, 2006-Ohio-4114.
 {¶ 7} On July 14, 2006, appellants re-filed their complaint, naming appellees and Grange Insurance Company ("Grange"), Nichols' personal automobile insurer, as defendants. In their re-filed complaint, appellants alleged claims for breach of fiduciary duty, negligence, and misrepresentation against appellees, a claim of vicarious liability against Schwendeman Agency, and a claim against Grange to protect rights of subrogation and reimbursement.[1] In addition, Carla Nichols asserted a claim against appellees for loss of consortium.
 {¶ 8} On November 28, 2006, appellees moved for summary judgment on each of appellants' claims, arguing that no fiduciary relationship existed between themselves and appellants, that appellants could not establish the elements of negligence, and that appellants had no evidence of any misrepresentation by appellees. Appellants filed a *Page 5 
memorandum contra on January 5, 2007, and appellees filed a reply memorandum on January 19, 2007. On April 23, 2007, the trial court granted appellees' motion for summary judgment. Appellants filed a timely notice of appeal.
 {¶ 9} In their single assignment of error, appellants assert:
 THE TRIAL COURT ERRED IN GRANTING [APPELLEES'] MOTION FOR SUMMARY JUDGMENT.
 {¶ 10} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. *Page 6 
 {¶ 12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 13} We first address appellants' claim for breach of fiduciary duty. In granting summary judgment in favor of appellees, the trial court found that appellants presented no evidence of a fiduciary relationship with appellees and demonstrated no breach of duty. On appeal, appellants argue genuine issues of material fact, as to the presence of a fiduciary relationship, preclude summary judgment. Despite the trial court's statement that it considered all Civ.R. 56(C) evidence, appellants contend that the trial court failed to consider Nichols' deposition testimony and responses to interrogatories in determining whether a fiduciary relationship existed between appellants and appellees.
 {¶ 14} The Ohio Supreme Court has defined a "fiduciary relationship" as one `"in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'"Ed Schory Sons, Inc. v. Soc. Natl. Bank, 75 Ohio St.3d 433, 442,1996-Ohio-194, quoting In re Termination of Emp. (1974),40 Ohio St.2d 107, 115. A fiduciary *Page 7 
relationship may be created out of an informal relationship "only when both parties understand that a special trust or confidence has been reposed." Umbaugh Pole Bldg. Co., Inc. v. Scott (1979),58 Ohio St.2d 282, paragraph one of the syllabus; Hoyt v. Nationwide Mut. Ins.Co., Franklin App. No. 04AP-941, 2005-Ohio-6367, at ¶ 30-31. Thus, a fiduciary relationship cannot be unilateral; it must be mutual.Horak v. Nationwide Ins. Co., Summit App. No. CA 23327, 2007-Ohio-3744, at ¶ 32; Slovak v. Adams (2001), 141 Ohio App.3d 838, 847.
 {¶ 15} Whether or not a fiduciary relationship exists depends on the facts and circumstances of each case. Horak at ¶ 31, citing Depugh v.Ohio Dept. of Commerce, Div. of Real Estate (1998), 128 Ohio App.3d 528,533. However, Ohio courts have held that the relationship between an insurance agent and his client is generally not a fiduciary relationship, but, rather, an ordinary business relationship. Advent v.Allstate Ins. Co., Franklin App. No. 05AP-1092, 2006-Ohio-2743, at ¶ 14; Slovak. "While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance." Nielsen Ent.,Inc. v. Ins. Unlimited Agency, Inc. (May 8, 1986), Franklin App. No. 85AP-781. Thus, without more, the relationship between an insurance agent and an insured is not a fiduciary relationship. Roberts v.Maichl, Hamilton App. No. C-040002, 2004-Ohio-4665, at ¶ 15.
 {¶ 16} In support of their motion for summary judgment, appellees submitted Schwendeman's affidavit, in which Schwendeman refutes any understanding on his part of a fiduciary relationship with appellants. Schwendeman states that, at all times, he viewed his dealings with appellants to be part of an ordinary agent-client business *Page 8 
relationship, similar to his relationships with other clients. Schwendeman further states that he never recognized, believed or assumed that appellants placed any special confidence or trust in either himself or Schwendeman Agency. In addition to their reliance on Schwendeman's affidavit, appellees also argue that Nichols' own deposition testimony confirms that the relationship between appellants and appellees was an ordinary business relationship, not a fiduciary one.
 {¶ 17} Appellants, on the other hand, contend that Nichols' deposition testimony and responses to interrogatories demonstrate that appellants placed special trust and confidence in appellees. In his deposition, Nichols testified that, when the State Auto policies renewed, "we always [got] together with the insurance agent and discuss[ed] the renewal of the policy to make sure that insurances were up to speed with what we were doing." (Nichols Depo. at 33.) In response to an interrogatory asking why he thought a fiduciary relationship existed between appellants and appellees, Nichols responded:
 We paid them for their services to recommend the proper coverages for the business and we didn't dictate coverage we depended on them for our needs and values. We trusted Schwendeman with our confidential and proprietary business information as well as a great deal of private personal information based upon our belief that he would use all such information in our best interest and in the best interest of our business ventures.
From such evidence, appellants argue that genuine issues of material fact remain as to the existence of a fiduciary relationship between appellants and appellees. We disagree.
 {¶ 18} While Nichols' testimony suggests that Nichols relied on appellees, an insured's reliance on his insurance agent is not sufficient, by itself, to establish a *Page 9 
fiduciary relationship. In Nielsen, this court rejected a claim of fiduciary duty between an insurance agent and his client despite an admittedly ongoing business relationship between the parties and justifiable reliance by the client upon the agent's advice, stating that the record failed to show that the relationship was other than ordinary. See, also, Ed Schory Sons, Inc. at 443 (holding, in the analogous relationship of debtor and creditor, that advice given by a creditor and relied upon by a debtor is insufficient to create a fiduciary relationship "in a commercial context in which the parties deal at arm's length, each protecting his or her respective interests").
 {¶ 19} Although appellants rely on this court's opinion inAshworth v. Lincoln Natl. Life Ins. Co., Franklin App. No. 95APE09-1181, for the proposition that a client's reliance on his insurance agent's advice is sufficient to overcome summary judgment on a breach of fiduciary duty claim, that case is distinguishable. InAshworth, the evidence demonstrated that the client relied on the insurance agent as his financial advisor and that the agent specifically instructed the client on how to complete an application for a disability insurance policy, telling the client to consider every source of income and to estimate high. Thus, the record in Ashworth contained evidence distinguishing the relationship at issue there from the ordinary insurance agent-client relationship.
 {¶ 20} In Advent, this court rejected a claim that a fiduciary relationship arose between an insurance agent and his client. There, the plaintiff claimed that his insurance agent breached a fiduciary duty by allegedly failing to advise him about UIM coverage. The trial court entered summary judgment in favor of the agent, and we affirmed, finding no fiduciary relationship where "the evidence [did] not demonstrate the bilateral understanding required to convert an arms-length business relationship into a *Page 10 
fiduciary one." Advent at ¶ 15. Although the plaintiff testified that he relied upon the agent to advise him of the appropriate coverage for his needs, we noted that the plaintiff never communicated his reliance to the agent. "[T]o show a fiduciary duty owed by an insurance agent, the party claiming breach must show evidence of some special trust or confidence placed in the agent by the insured and recognized by theagent" (Emphasis added.) Gillin v. Indiana Ins. Co. (Oct. 30, 1998), Montgomery App. No. CA 17108.
 {¶ 21} Here, even accepting that appellants' evidence demonstrates that they reposed a special trust or confidence in appellees, the record contains no evidence that appellees recognized such a trust or confidence. Schwendeman's affidavit states that he did not understand his relationship with appellants to be anything other than an ordinary business relationship. While appellants maintain that Schwendeman's understanding of his relationship with appellants is a factual issue for a jury to decide, they have presented no evidence to create such a question of fact. Appellants presented no evidence to contradict Schwendeman's statement that he viewed his relationship with appellants as an ordinary agent-client relationship and was unaware of any special confidence or trust reposed in him by appellants. Nor did appellants present evidence to draw into question the veracity of Schwendeman's affidavit. Simply put, the record contains no evidence that appellants communicated their alleged special confidence or trust to appellees. Thus, like in Advent, the record does not demonstrate a bilateral understanding, as is necessary to convert an ordinary business relationship into a fiduciary one.
 {¶ 22} Upon review of the record and viewing the evidence in the light most favorable to appellants, we find no evidence from which reasonable minds could *Page 11 
conclude that the relationship between appellants and appellees was anything other than an ordinary business relationship between an insurance agent and a client. Without more, such a relationship does not take on a fiduciary character. Accordingly, we find no error in the trial court's conclusion that no fiduciary relationship existed between appellants and appellees or in the trial court's entry of summary judgment on appellants' claim for breach of fiduciary duty.
 {¶ 23} Appellants next argue that the trial court erred in granting summary judgment on their negligence claim, in which they contend that appellees breached a duty by failing to procure replacement UIM coverage and/or by failing to advise appellants about obtaining such coverage. The trial court concluded that, in the absence of evidence that appellants requested procurement of replacement coverage after State Auto eliminated UIM coverage for hired and non-owned vehicles, appellees could not be deemed negligent for failing to procure such coverage.
 {¶ 24} To establish actionable negligence, a plaintiff must establish the existence of a duty, breach of that duty, and an injury resulting proximately from the breach. Menifee v. Ohio Welding Prod., Inc. (1984),15 Ohio St.3d 75, 77. As the trial court correctly noted, an insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance its customers request. Nichols v. Progressive Ins.Co., Franklin App. No. 01AP-899, 2002-Ohio-3058, at ¶ 47, citingFirst Catholic Slovak Union of U.S. Canada v. Buckeye Union Ins.Co. (1986), 27 Ohio App.3d 169, 170; Advent at ¶ 17. Additionally, if an insurance agent knows that a customer is relying upon his expertise, then the agent owes a further duty to exercise reasonable care in advising the customer. Id.; Rose v. Landon, Warren App. No. CA2004-06-066, 2005-Ohio-1623, *Page 12 
at ¶ 16. However, the insured has a corresponding duty to examine the policy, know the extent of its coverage, and notify the agent if said coverage is inadequate. The Island House Inn, Inc. v. State Auto Ins.Cos., 150 Ohio App.3d 522, 2002-Ohio-7107, at ¶ 16.
 {¶ 25} Analogizing a negligence claim against an insurance agent with a professional negligence claim against a doctor, attorney or accountant, appellees argue that they were entitled to summary judgment on appellants' negligence claim based on appellants' failure to identify an expert witness to testify regarding the standard of care applicable to insurance agents. In support of their argument, appellees rely on an Eighth District Court of Appeals' holding that it is necessary to establish the standard of care applicable to an insurance agent through expert testimony. MBE Collection, Inc. v. Westfield Cos., Inc., Cuyahoga App. No. 79585, 2002-Ohio-1789. See, also, Associated VisualCommunications v. Erie Ins. Group, Stark App. No. 2006 CA 00092,2007-Ohio-708, at ¶ 65-66, quoting MBE Collection, Inc. This court has not previously adopted a requirement of expert testimony in a negligence action against an insurance agent, and the trial court did not do so in granting summary judgment in favor of appellees. Likewise, on appeal, we need not address appellees' arguments regarding the necessity of expert testimony in order to affirm the entry of summary judgment on appellants' negligence claim.
 {¶ 26} With the May 11, 1999 letter, appellees informed appellants that, beginning with the policy period commencing on June 5, 1999, the State Auto policies would not provide UIM coverage for hired and non-owned vehicles and instructed appellants to contact appellees if they desired to change their coverages. Appellants do not dispute the receipt of appellees' letter, and the record contains no evidence that *Page 13 
appellants requested additional or different coverage. In the absence of a request from appellants for replacement coverage, reasonable minds could only conclude that appellees did not breach a duty to exercise good faith and reasonable diligence in obtaining the insurance that appellants requested. An insurance agent owes no duty to seek replacement coverage for an insured in the absence of a request by the insured to do so. See Slovak at 845. Additionally, even were we to conclude that appellees knew that appellants were relying on their expertise so as to give rise to the additional duty to exercise reasonable care in advising appellants, reasonable minds could not conclude that appellees breached such a duty in light of the undisputed evidence that appellees advised appellants of the elimination of UIM coverage from their policies. Moreover, given Schwendeman's undisputed testimony that UIM coverage for hired and non-owned vehicles was not available in the marketplace after State Auto ceased offering such coverage, appellants cannot demonstrate that their injuries proximately resulted from appellees' failure to procure such coverage or to orally discuss the elimination of such coverage with appellants. Accordingly, we find no error in the trial court's entry of summary judgment in favor of appellees on appellants' negligence claim.
 {¶ 27} In their final claim, for misrepresentation, appellants argue that appellees materially concealed State Auto's elimination of UIM coverage for hired and non-owned vehicles from appellants. The elements of a cause of action for intentional misrepresentation are: (a) a representation, or, where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading *Page 14 
another into relying upon it; (e) justifiable reliance upon the representation; and (f) a resulting injury proximately caused by the reliance. Brothers v. Morrone-O'Keefe Dev. Co., LLC, Franklin App. No. 03AP-119, 2003-Ohio-7036, citing Brewer v. Brothers (1992),82 Ohio App.3d 148, 153.
 {¶ 28} Appellants argue that, when appellees became aware of State Auto's elimination of UIM coverage for hired and non-owned vehicles, they had a duty to discuss the policy change with appellants. Appellants further argue that appellees failed to discuss the change with them and failed to seek replacement coverage from other insurance companies. The trial court noted that appellees presented evidence that they alerted appellants to State Auto's elimination of UIM coverage for hired and non-owned vehicles. The trial court also noted appellees' submission of several renewal notices demonstrating the removal of UIM coverage from the policies, beginning with the renewal period commencing on June 5, 1999. The court found that appellants failed to offer any contradictory evidence to demonstrate a genuine issue of material fact as to their misrepresentation claim. We agree.
 {¶ 29} The declarations page of the State Auto policies for the policy period beginning June 5, 1999, and the letter from the Schwendeman Agency, dated May 11, 1999, both informed appellants of the elimination of UIM coverage from their policies. Additionally, the May 11, 1999 letter instructed appellants to contact the Schwendeman Agency if they desired to make any changes to their coverage. Nichols testified that he received the yearly policy renewals for the State Auto policies and, each time, reviewed the declaration pages contained therein. Additionally, Nichols did not dispute that he received the May 11, 1999 letter. Appellants identify no evidence creating a genuine *Page 15 
issue of material fact as to whether appellees failed to disclose the change in the State Auto policy brought about by State Auto's elimination of UIM coverage for hired and non-owned vehicles from its offerings. Rather, the undisputed evidence demonstrates that State Auto and appellees notified appellants of the change to the coverages provided under the policies. Despite the invitation to do so, appellants did not request that appellees seek the eliminated coverage from other insurance companies. Upon review, we find no evidence of a representation or concealment of fact upon which appellants may premise a claim for misrepresentation, and we find no error in the trial court's grant of summary judgment in favor of appellees on appellants' misrepresentation claim.
 {¶ 30} For the foregoing reasons, we overrule appellants' assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.
[1] Appellants voluntarily dismissed their claim against Grange on August 30, 2006. *Page 1