[Cite as *FDT Group, L.L.C. v. Guaraci*, 2017-Ohio-663.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FDT Group, LLC, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-679 |
| v. | : | (C.P.C. No. 15CVH-8901) |
| Dan Guaraci, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on February 23, 2017

---

**On brief:** *Cook, Sladoje & Wittenberg Co., LPA, Eric J. Wittenberg, Moran N. Nusbaum,* and *Adam C. Sims,* for appellant. **Argued:** *Adam C. Sims.*

**On brief:** *Lane Alton, Monica L. Waller,* and *Joseph A. Gerling,* for appellee. **Argued:** *Monica L. Waller.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, FDT Group, LLC, appeals from the judgment entry of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee, Dan Guaraci, and dismissing appellant's claims. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Unless otherwise noted, the following facts are undisputed. Appellant, a company in the business of acquiring, remodeling, and managing real property, is one of multiple businesses owned by Dimitry Filonenko ("Filonenko") and his wife, Tatiana. Filonenko came to Columbus from Ukraine in 1997, where he had previously earned a

bachelor's degree in physics and a master's degree in computer science and international business administration.  Irenna Fisher serves as the operations manager for all the Filonenkos' businesses.  Fisher's duties included managing the process to identify and secure property insurance, including directly interacting with insurance agents, while Filonenko made all final decisions regarding insurance.

{¶ 3}   Around 2013, Filonenko instructed Fisher to find a new insurance agent to handle insurance for all of Filonenko's businesses.  After some internet research, Fisher contacted approximately three or four insurance agents to request quotes, including appellee.  Filonenko did not know appellee prior to approving insurance quotes from him and agreed that Fisher was appellee's direct contact.

{¶ 4}   The record does not show that Filonenko actually selected one out of the several insurance agents from separate companies to procure insurance for all of his businesses. Rather, when appellant acquired a new property, Fisher would send information to three insurance agents, including appellee, and wait for their responses.  Fisher agreed that she essentially undertook a competitive bidding process in securing property insurance and that, for the most part, price was the deciding factor in which agent she would select.  Filonenko agreed that they generally had a process in which insurance companies competed against each other and that he expected the agents to sell additional—possibly unneeded—pieces of coverage to profit their business.  Filonenko did not tell Fisher to let agents know she was relying on them to assess what kind of insurance coverage to get for a property and did not have a conversation with appellee himself to let appellee know he was relying on him to determine the type of coverage needed.  Filonenko said all the agents "always assure [him] they're going to be working for me and to fit my needs and use their experience and knowledge" and that appellee did not possess a different position with respect to his business than the other agents.  (Filonenko Dep. at 80.)

{¶ 5}   Over the course of the year, appellee provided several quotes to appellant regarding various properties and automobile insurance.  On occasion, appellee would adapt his proposal to not include certain pieces of additional coverage that appellant had previously rejected.  Also during this time, on October 25, 2013, appellee sent Fisher an e-

mail with an attached subcontractor agreement template approved by an insurance company that appellant could use with subcontractors.

{¶ 6} In December 2014, Filonenko told Fisher to get insurance on a specific commercial property in Reynoldsburg, Ohio ("the property") that appellant recently purchased. The property included a main building with two floors, the lower of which stood partially below grade with windows at ground level, and two warehouse outbuildings. Filonenko did not give Fisher any additional instructions regarding procuring the property insurance, did not tell her that the main building had a lower level, and did not have a conversation with her about water backup coverage for the property.

{¶ 7} On December 15, 2014, Fisher contacted appellee to request a quote for insurance coverage. Fisher told appellee what coverages and deductible Filonenko wanted and asked appellee "to provide [the] necessary coverage" in the quote. (Fisher Dep. at 62.) Fisher did not ask for specific coverage, including water backup coverage. Fisher did not tell appellee that she was relying on him to determine optional coverages. Fisher informed appellee that she had not visited the property and did not know anything about it, other than its address, the number of buildings on the property, and its purchase price. Appellee told Fisher he would visit the property and did so before preparing a proposal. Appellee did not include water backup coverage in the proposal he submitted to Fisher. According to Fisher, after the present conflict arose, appellee told her he did not include it because Filonenko denied the coverage on two other properties, so he assumed he did not want it on other properties. Appellee asserted that he did not include water backup coverage because appellant had not requested it and because it is an optional coverage that is rarely purchased on a commercial property.

{¶ 8} Fisher thought that had she visited the property, she possibly would have changed her mind about requesting water backup coverage or at least asked questions about it. In his deposition, Filonenko stated that he was aware of water backup coverage and that his position is that properties which go below grade need water backup coverage. Filonenko agreed that several of his properties with lower levels did not have water backup coverage but attributed this to those properties' locations at the top of hills. At least one and possibly several properties with a basement did have water backup coverage, or basement coverage, procured through an agent other than appellee.

{¶ 9} Although Filonenko agreed that he should review quotes of insurance agents to see whether the coverage he wants is in the policy, he did not read the proposal prepared by appellee for the Reynoldsburg property. After appellant received the written proposal from appellee, Filonenko did not tell Fisher to ask appellee specifically about water backup coverage and assumed that everything that needed to be covered by insurance was provided in the quote. According to appellant's response to request for admissions, it "was not made aware of the availability of sewer line backup coverage for the property, so, it was unable to request it." (Pl.'s Reply to Def.'s First Set of Interrogs., Reqs. for Admis. and Reqs. for Produc. of Docs. at 3.)

{¶ 10} Appellant accepted the proposal prepared by appellee. With the addition of the Reynoldsburg property, appellee had procured insurance for 3 of appellant's approximately 20 properties, while at least 2 other insurance agents unaffiliated with appellee handled the remainder of appellant's properties. Appellee expressed interest in gaining more of appellant's business and communicated his experience and qualifications to Fisher.

{¶ 11} A letter dated February 3, 2015 indicates that the hard copy of the insurance policy for the Reynoldsburg property was delivered to appellant and states that appellant should contact appellee should a change or adjustment in coverage be needed. Fisher did not recall whether she looked at the policy at that time and stated that she typically does not look at anything in the policy other than the address. Filonenko did not read the policy and did not expect Fisher to read the policy. According to Filonenko and Fisher, instead of reading the policies, they would rely on the insurance agent's experience to provide needed coverage. Appellee averred that he had never acted as a fiduciary for appellant and, instead, acted in accordance with an ordinary business relationship, and believed that appellant was capable of evaluating his proposals and making its own business decisions regarding purchasing insurance policies.

{¶ 12} In April 2015, the Reynoldsburg property flooded due to a water pipe backup, and appellant contacted appellee's office to report the claim. Appellee filed a claim with Cincinnati Insurance on behalf of appellant, but the claim was denied because the insurance policy did not include water backup coverage.

{¶ 13} On October 6, 2015, appellant filed a complaint alleging negligent placement and negligent misrepresentation in seeking damages for appellee's failure to procure water backup coverage for the Reynoldsburg property. Appellee filed his answer on November 9, 2015, and then moved for summary judgment on all claims on July 1, 2016. Appellee argued that reasonable minds could not conclude that appellee breached any duty owed to appellant, as appellant did not request water backup coverage, and appellant could not establish that appellee had a fiduciary duty to recommend water backup coverage to appellant. Moreover, appellee argued that any loss to appellant is due to its failure to read its own policy.

{¶ 14} In its memorandum in opposition to summary judgment, appellant argued that a genuine issue of material fact exists regarding whether a fiduciary relationship exists between appellant and appellee, that appellee could not raise for the first time in summary judgment the comparative negligence defense of failing to read the policy, and that, regardless, an issue of fact remains on comparative negligence. Appellee's subsequent reply pointed to its assertion of comparative negligence in its answer to the complaint and argued that because appellant presented no evidence of negligence on the part of appellee, summary judgment in favor of appellee is appropriate.

{¶ 15} On September 20, 2016, the trial court granted summary judgment in favor of appellee, finding that appellant failed to provide evidence that appellee owed appellant any fiduciary duty to specifically recommend water backup coverage. Appellant filed a timely appeal to this court.

## II. ASSIGNMENT OF ERROR

{¶ 16} Appellant presents one assignment of error:

> The trial court erred in granting Defendant-Appellee's Motion for Summary Judgment when genuine issues of material fact remained to be decided.

## III. STANDARD OF REVIEW

{¶ 17} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to

but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

{¶ 18} Appellate review of summary judgments is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Id.*, *citing Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Id.*, citing *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## IV. DISCUSSION

{¶ 19} Under the first assignment of error, appellant contends that it provided the trial court with evidence sufficient to demonstrate the existence of a genuine issue of material fact as to whether appellant relied on appellee's expertise and whether appellee recognized appellant's reliance in procuring the insurance policy for the Reynoldsburg property. We disagree.

{¶ 20} "To establish actionable negligence, a plaintiff must establish the existence of a duty, breach of that duty, and an injury resulting proximately from the breach." *Nichols v. Schwendeman*, 10th Dist. No. 07AP-433, 2007-Ohio-6602, ¶ 24, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). In the context of an insurance agent procuring insurance for a client, the insurance agent has: (1) a duty to exercise good

faith and reasonable diligence in obtaining the insurance a customer requests, and (2) if the insurance agent knows that customer is relying on his expertise, a duty to exercise reasonable care in advising the customer. *Nichols* at ¶ 24. In turn, the customer has a "corresponding duty to examine the policy, know the extent of its coverage, and notify the agent if said coverage is inadequate." *Id.*

{¶ 21} Furthermore, as a general rule, "the relationship between an insurance agent and his [or her] client is not a fiduciary relationship, but rather, an ordinary business relationship." *Advent v. Allstate Ins. Co.*, 10th Dist. No. 05AP-1092, 2006-Ohio-2743, ¶ 14. *Nielsen Ents., Inc. v. Ins. Unlimited Agency, Inc.*, 10th Dist. No. 85AP-781 (May 8, 1986) ("While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance."). However, in certain circumstances, a customer's reliance on an insurance agent may give rise to a fiduciary relationship. *Nichols* at ¶ 18-20; *Advent* at ¶ 14-15. For example, where the evidence demonstrates that both the insurance agent and the customer hold a "bilateral understanding" that the customer is relying on the agent based on a special trust and confidence in the agent, the ordinary arm's length business relationship between the two parties may rise to a fiduciary relationship. *Advent* at ¶ 13 (internal cites omitted) (stating that "a fiduciary relationship forms when special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust"). If such a fiduciary relationship is formed, the agent has " ' "a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." ' " *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 16, quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988), quoting *Haluka v. Baker*, 66 Ohio App. 308, 312 (9th Dist.1941).

{¶ 22} In this case, appellant argues that evidence showing that appellee made independent decisions on appellant's behalf in choosing what optional coverages to recommend, pursued appellant's business, emphasized his trustworthiness and expertise, consistently provided appellant with explanations of coverages and requested information, provided a subcontractor template, recommended another agent in certain situations, and visited the Reynoldsburg property raises a genuine issue of fact as to

whether a fiduciary relationship existed between the parties. We disagree, finding instead that this undisputed record evidence shows that appellee possessed an ordinary business relationship with appellant.

{¶ 23} Filonenko, a sophisticated business man running multiple businesses and owning many properties, repeatedly testified to understanding their relationship to be one where appellee would make recommendations in his own self-interest. Filonenko did not have a personal relationship with and did not communicate directly with appellee and had only an approximate one-year business relationship with appellee prior to the proposal at issue. Appellant utilized a competitive process to receive multiple insurance proposals from several agents, and Filonenko admitted that he was the ultimate decision maker regarding the insurance, that he knew about water backup coverage generally and had it on other properties, and that it was his own responsibility to make sure the coverage he wants is included within the policy. We find, based on this record, appellant's reliance on appellee to be "no different than the reliance any client would place on an insurance agent" and that no special relationship of trust and confidence existed between the parties. *Horak v. Nationwide Ins. Co.*, 9th Dist. No. CA 23327, 2007-Ohio-3744, ¶ 59.

{¶ 24} Moreover, undisputed record evidence shows that appellee did not have an understanding that appellant was relying on his expertise when it came to water backup coverage. Appellee averred that he had an ordinary business relationship with appellant and believed appellant evaluated his proposals and made independent business decisions. Evidence that Fisher told appellee to provide "necessary coverage," and evidence that appellee knew that Fisher had not seen the property herself and that he viewed the property, do not put appellee's averments into dispute. (Fisher Dep. at 62.) Appellee knew that the person making the ultimate decision on the insurance, Filonenko, purchased the property and was familiar with water backup insurance. As stated previously, Filonenko does not dispute these facts.

{¶ 25} Overall, after an independent review of the record, we find no genuine issue of material fact remains to be litigated regarding whether appellee had a duty to specifically recommend water backup coverage for the Reynoldsburg property. Viewing the evidence most strongly in favor of appellant, reasonable minds can come to but one conclusion, that conclusion being adverse to appellant. Therefore, appellee is entitled to

judgment as a matter of law, and summary judgment in favor of appellee is appropriate. Civ.R. 56(C); *Harless* at 66.

{¶ 26} Accordingly, appellant's sole assignment of error is overruled.

## V.  CONCLUSION

{¶ 27} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

_____